**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cv-01327-WJM-NYW

CO Craft, LLC dba Freshcraft,

    Plaintiff,

v.

Grubhub, Inc.,

    Defendant.

---

**OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
BY LYNN SCOTT, LLC, THE FARMER'S WIFE, LLC, AND 30 ADDITIONAL
RESTAURANT OWNERS**

---

# INTRODUCTION

When Grubhub started listing 150,000 small, local restaurants on its platform without permission, the company's value increased by $4 billion in less than eight months. Under the Lanham Act, those restaurant owners are entitled to disgorgement of Grubhub's massive profits. But the proposed settlement now before the Court would release those claims for no money—and do so without first notifying restaurants or giving them a fair opportunity to object. The proposed settlement would also permit Grubhub to continue using restaurants' trademarks on its platform without first obtaining authorization and would prohibit restaurants from ever suing to stop Grubhub's ongoing trademark infringement.

Objectors Lynn Scott and The Farmer's Wife are restaurant owners who filed suit in the Northern District of Illinois to stop Grubhub from using restaurants' trademarks without permission and to recoup Grubhub's ill-gotten gains for the affected restaurants. At that time, the case before this Court case involved a much smaller class of restaurants and sought to stop Grubhub from falsely advertising that certain restaurants were closed or not accepting online orders. But after the *Lynn Scott* case was filed, Grubhub and Plaintiff Freshcraft worked together to expand their proposed class so that it included the same 150,000 restaurants as the *Lynn Scott* case—and then to extinguish those restaurants' claims for no money.

Grubhub and Freshcraft request that the Court approve their proposed settlement *without notifying any of the 150,000 restaurants who would be bound by its terms*. So that the Court can better assess the wisdom of doing so, Objectors have contacted a number of restaurant owners to see what they think of Grubhub's proposed settlement. Not one restaurant that Objectors contacted is in favor of the settlement. The owner of First Seat in Bentonville, Arkansas, might have put it

1

best: "If this settlement goes through, it will allow Grubhub to legally use *our* name to build up *their* business, all without our permission. The settlement would allow Grubhub to continue engaging in this predatory behavior unhindered." (Walden Decl., ¶ 5.)

## BACKGROUND

### I.  Grubhub's revenues soar after using restaurants' trademarks without permission.

For 15 years, Grubhub told consumers it had partnered with local restaurants to offer coordinated takeout or delivery services. By ordering through Grubhub, consumers were promised "a direct line into the kitchen, avoiding the inefficiencies, inaccuracies and frustrations associated with paper menus and phone orders." But in late 2019, Grubhub saw it was losing market share and decided it needed to act fast to expand its user base. So Grubhub began researching which restaurants were most popular with consumers—and then added more than 150,000 to its platform without their permission. (*See* Lynn Scott Compl., ¶¶ 1-2, 25-30, ECF No. 40-1.)

Grubhub's unauthorized use of popular restaurants' names and logos had the desired effect. Soon, Grubhub was reporting record revenues and telling shareholders they could expect to see continued growth as a result of its new strategy. Before Grubhub started using restaurants' trademarks without their consent, its business was valued at about $3 billion. But less than seven months later, the company's value had more than doubled to $7.3 billion. (*Id.*, ¶¶ 3, 31-33.)

### II.  Grubhub's trademark infringement misleads consumers and harms restaurants.

Grubhub's financial success has come at restaurants' expense. Consumers still think they're getting a "direct line into the kitchen," but when they order from a restaurant that has been included on Grubhub without the restaurant's permission, the result is a "suboptimal diner experience rife with operational challenges"—or as Grubhub's CEO succinctly put it, "the diner

2

experience sucks." Consumers understandably blame the restaurants, who they think have partnered with Grubhub to provide them with accurate, reliable, and timely service. The end result for restaurants is significant damage to their hard-earned reputations, loss of control over their customers' satisfaction, and loss of control over their online presence. (*See id.*, ¶¶ 4-5, 34-79.)

For example, Tark's restaurant in Dania Beach, Florida, received several bad reviews after Grubhub started listing the fifty-year-old restaurant on its platform without permission. (*See* Itzoe Decl., ¶ 4.) In some cases, a customer would order food through Grubhub but no one from Grubhub would arrive to pick up the order. In others, customers placed an order through Grubhub, but Tark's never received the order. (*Id.*) The Burgers in Knoxville, Tennessee, has had similar experiences. Grubhub drivers often showed up late and delivered food cold, triggering bad reviews for the restaurant. (Bartholomew Decl., ¶ 6.) On one occasion, Grubhub phoned in an order shortly before the restaurant's 9 p.m. closing time, but did not pick up the order until after 9:45 p.m. (*Id.*, ¶ 8.)

Foraged Hyperseasonal Eatery in Baltimore likewise received an order from Grubhub just as the restaurant was closing for the evening. But the order was for food that the restaurant wasn't currently serving and could not be filled. The customer called the restaurant upset, and the owner was forced to pull something together and hand deliver it to the customer. (Amendola Decl., ¶ 3.) Lissy's Dough and Dairy has similarly had to disappoint numerous potential customers who placed orders for its ice cream cakes through Grubhub. (Hardisty Decl., ¶ 3.) Grubhub had not told the customers that the ice cream cakes take two to three days to make and the order could not be filled immediately. (*Id.*, ¶ 3; *see also* Curry Decl., ¶ 5; Rodriguez Decl., ¶ 3.)

**III.    Grubhub says it will remove restaurants upon request but often does not.**

Grubhub claims it allows restaurants to request their trademarks be removed from

Grubhub's platform. But that places the onus on busy restaurant owners to constantly monitor the Grubhub platform—which includes Grubhub, Seamless, AllMenus, and MenuPages—to ensure their trademarks are not being used without permission. And it often takes numerous requests before Grubhub actually complies with a request for removal—if Grubhub complies at all.

The owner of the Heirloom Salad Company and The Java House Iowa City describes the process as a game of whack-a-mole. (Cronbaugh Decl., ¶ 5.) It is difficult to track when Grubhub is using her restaurants' trademarks without permission, requires several calls to address, and just as one restaurant location is finally removed from the Grubhub platform, another pops up in its place. (*Id.*, ¶¶ 3, 5.) The owner of the Poke Beach in Carson City, Nevada, has made some 12 calls to Grubhub over the past year and a half, but Grubhub *still* refuses to remove the restaurant from its platform. (Bainton Decl., ¶ 4.) The owner of White Pine Pizza 2 has contacted Grubhub at least 20 times, but is still listed on Grubhub's platform without consent, and Grubhub is still using an inaccurate menu that causes frequent problems for the restaurant. (Curry Decl., ¶¶ 4-5.) Sometimes nobody answers his calls, other times Grubhub has said it couldn't help him, and sometimes Grubhub simply hangs up on him. (*Id.*, ¶ 4; *see also* Bartholomew Decl., ¶ 5.)

**IV.    The *Lynn Scott* class action was filed to stop Grubhub from using restaurants' trademarks without their consent.**

In October 2020, Lynn Scott and The Farmer's Wife filed a proposed class action to stop Grubhub's practice of listing restaurants on its platform without their permission. (*See* Lynn Scott Compl., ECF No. 40-1.) The case was filed in the Northern District of Illinois, where Grubhub is headquartered, and asserts class claims under the trademark prong of Section 43(a) of the Lanham Act. That prong allows owners of unregistered trademarks like restaurant names and logos to enjoin unauthorized uses that are likely to cause consumer confusion, as well as to seek a

4

disgorgement of all profits earned as a result of the unauthorized use of their trademarks. 15 U.S.C. §§ 1116, 1117(a), 1125(a)(1)(A). Lynn Scott and The Farmer's Wife proposed to represent a class of more than 150,000 restaurants who were included on Grubhub's platform without permission, and sought a permanent injunction as well as a disgorgement of the enormous profits Grubhub has reaped by using class members' trademarks without permission. (*Id.*, ¶¶ 6-7, 97, 111-112.)

**V.    This case was expanded to include—and settle—restaurants' trademark claims only *after* the *Lynn Scott* case was filed.**

When the *Lynn Scott* case was filed, the *Freshcraft* case concerned only restaurants Grubhub had falsely advertised as closed or not accepting online orders. (Freshcraft Compl., ¶¶ 1, 34-35.) Plaintiff Freshcraft and Grubhub had begun negotiating a settlement on behalf of that limited group of restaurants in August 2020, and had mediated their false advertising claims with Hon. Diane M. Welsh (Ret.) on October 29, 2020, December 17, 2020, and January 8, 2021. (Mot. at 3; ECF No. 40-3 at 1.) None of those mediations were successful. But on the very day that Grubhub was required to respond to the *Lynn Scott* complaint, Freshcraft and Grubhub agreed to enlarge the proposed class definition in this case to include the *Lynn Scott* class. (Freshcraft Am. Compl., ¶ 34, ECF No. 35-2.) Less than a month later, Freshcraft and Grubhub announced that it had settled the newly enlarged class's claims. (ECF No. 36.) The parties' settlement: (i) allows Grubhub to continue using restaurants' names and logos without permission; (ii) provides for *no notice* of the settlement's terms to class members; (iii) forbids more than 150,000 restaurants from ever suing to stop Grubhub from using their "names, logos, or other intellectual property"; and (iv) releases the restaurants' right to recover Grubhub's ill-gotten gains. (Settlement, ¶¶ 3.1.1, 3.2.2, 3.4, ECF No. 47-1.)  In exchange, Grubhub agrees to pay Freshcraft's counsel's fees and Freshcraft itself—but pays nothing to the 150,000 class members. (*Id.*, ¶¶ 7.1-7.2.)

## ARGUMENT

**I.     The proposed settlement does not merit preliminary approval.**

Recent amendments to Rule 23 direct that proposed class settlements be presented to the Court "in terms of a shorter list of core concerns." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include (i) whether plaintiffs and their counsel have adequately represented the class, (ii) whether the proposed settlement was negotiated at arm's length, (iii) whether the relief provided for the class is adequate, and (iv) whether the proposed settlement treats class members equitably relative to one another Fed. R. Civ. P. 23(e)(2)(A)-(D).

An evaluation of these factors shows the settlement proposed by Freshcraft and Grubhub suffers from serious procedural and substantive infirmities. Objectors urge the Court to deny preliminary approval on that basis, and in so doing, preserve the restaurants' ability to obtain effective relief through the *Lynn Scott* class action. *See* Fed. R. Civ. P. 23(e)(1) (preliminary approval is warranted only if it's "likely" the court will be able to finally approve a settlement).

**A.     Objectors' interests were not adequately represented.**

When Freshcraft filed this case and began its settlement discussions with Grubhub, it was representing only a proposed class of restaurants whom Grubhub had falsely advertised as closed or not accepting online orders. Lynn Scott and The Farmer's Wife were not included in that proposed class, nor were most of the 30 other restaurants who are now objecting to this proposed settlement. Settlement discussions between Freshcraft and Grubhub began in August 2020 and continued through three mediation sessions in October 2020, December 2020, and January 2021. Objectors were not class members during these five months of settlement negotiations and their

6

interests were not being adequately represented.

Not until January 29, 2021, did Freshcraft seek to expand the proposed class here to cover Objectors and some 150,000 other restaurants whose trademarks have been used on Grubhub's platform without permission. (Am. Compl., ¶ 34, ECF No. 35-2.) Even then, the relief that Objectors care most about was never sought in this case—only in the *Lynn Scott* case. The *Lynn Scott* case seeks injunctive relief that would stop Grubhub from using restaurants' names, logos, and other trademarks on its platform without authorization. But Freshcraft's Amended Complaint continued to seek *only* an order requiring Grubhub to "discontinue its false advertising campaign that suggests competitors' restaurants as closed or not open for online ordering." (Am. Compl., ¶ 3, ECF No. 35-1.) Though Freshcraft never sought to enjoin Grubhub from using restaurants' trademarks, its proposed settlement would preclude others from seeking this relief—whether in *Lynn Scott* or in any other case. Under these circumstances, Freshcraft did not adequately represent Objectors' interests, particularly in regard to their claim for injunctive relief.

In assessing whether class members were adequately represented throughout the settlement process, the amount of discovery conducted prior to settlement is also an important consideration. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B), 2018 Adv. Comm. Notes. If extensive discovery has been conducted, a court may fairly conclude that the parties have a good understanding of the strengths and weaknesses of their case and that the settlement's value is based on an adequate information base. 4 *Newberg on Class Actions* § 13:49 (5th ed.). But here, Freshcraft conducted no formal discovery. And while the parties report that they agreed to informally exchange documents in August 2020, Freshcraft does not describe what those documents showed or how they allowed it to make an informed decision about the value of Objectors' claims. At that time, Objectors were

7

not members of Freshcraft's proposed class, and so it is doubtful that Grubhub's document production would have provided an adequate information base for resolving Objectors' claims.

### B.  The proposed settlement is not the result of arm's-length negotiations.

Freshcraft contends that its proposed settlement should be presumed fair because it was the product of arm's-length negotiations. (Mot. at 14.) That presumption has traditionally applied only when a settlement is negotiated after class certification, however—not to settlements negotiated prior to class certification, when the potential for collusion is far greater. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness.") In addition, the recent amendments to Rule 23(e) now require courts to consider whether a settlement was negotiated at arm's length as only one of four factors, which "arguably displaces its historic role as a 'presumption.'" 4 *Newberg on Class Actions* § 13:45.

But even if the arm's-length presumption were still available to Freshcraft, it would not apply here because there are good reasons to doubt whether the parties' negotiations were in fact conducted at arm's length. Courts typically look to the history of the litigation to help establish whether the parties have "vigorously advocated their respective positions through the pendency of the case." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (relying on a six-year history of the case, including extensive written and deposition discovery, contested discovery motions, and class certification briefing). But here, the parties engaged in virtually *no* litigation before settling: no written discovery, no depositions, no contested motion practice; Grubhub never even responded to Freshcraft's complaint. The history of the litigation does not, in other words, establish that Freshcraft vigorously advocated for Objectors' right to an injunction prohibiting Grubhub

8

from using their trademarks without permission. Freshcraft never even requested that relief on behalf of the class, though it has now agreed to release it as part of the settlement.

The involvement of a mediator can sometimes engender confidence that a settlement was negotiated at arm's length. *See* 4 *Newberg on Class Actions* § 13:50. But here, each of the parties' mediation sessions occurred *before* the proposed class was expanded to include Objectors' claims and before those claims were settled to Objectors' detriment. And the parties' behavior after their last unsuccessful mediation on January 8, 2021, bears several hallmarks of a collusive, reverse-auction settlement. *See* 4 *Newberg on Class Actions* § 13:60. Up until that point, Freshcraft was only representing a narrow class of restaurants who, like Freshcraft, had been falsely advertised as closed or not accepting online orders. But after Lynn Scott and The Farmer's Wife filed a much broader trademark case on behalf of 150,000 restaurants in the Northern District of Illinois, Grubhub and Freshcraft worked together to stay that case and then to settle it on terms highly favorable to Grubhub. Only hours before Grubhub moved to stay the *Lynn Scott* case, Freshcraft filed an amended complaint that expanded its proposed class definition to cover all the restaurants involved in *Lynn Scott*—and made no other substantive changes. Grubhub's motion relied heavily on this new class definition, in a manner that would not be possible if the parties were not already cooperating. (*See* ECF No. 40-2.) Then the day before Grubhub's reply brief was due, the parties announced they had reached a settlement, and Grubhub cited that settlement as a further reason to stay the *Lynn Scott* case. (*See* ECF No. 40-3.) All the while, neither Grubhub nor Freshcraft disclosed the existence of the *Lynn Scott* case to this Court, even though it was obligated to do so under D.C.COLO.LCivR 3.2(a). *See Ross v. Convergent Outsourcing, Inc.,* 323 F.R.D. 656, 660–61 (D. Colo. 2018) (denying preliminary approval where "the nature of the proposed settlement

9

raises a red flag as to whether it is the product of a so-called 'reverse auction'").

Other, more subtle signs of potential collusion are also present. As the Ninth Circuit has held, three indications that class counsel have allowed pursuit of their own self-interests to infect negotiations are: (1) when the class receives no monetary distribution but class counsel are amply awarded; (2) when the parties negotiate a "clear sailing" arrangement, in which a defendant agrees not to object to an award of attorneys' fees; and (3) when the parties agree to a "kicker" provision that reverts any unpaid attorneys' fees to the defendant rather than to the class. *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011). The Tenth Circuit recently agreed with *Bluetooth*'s analysis and adopted a "heightened scrutiny approach" for settlements that involve clear-sailing and kicker provisions. *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 20-2067, slip. op. at 23-24 (May 7, 2021). This is just such a settlement, meaning that the Court is required to "carefully consider" whether the settlement was negotiated at arm's-length; "take special care" to assure the class members receive fair and reasonable compensation; consider the fees and costs allocated to class counsel by the settlement in comparison to the value allocated to the class; and search for other indicia of self-dealing by class counsel. *Id.* at 24. The Court may also consider the structure of the negotiation process and seek independent verifications of any claim that attorneys' fees and costs were negotiated subsequent to and apart from class compensation. *Id.* Here, Freshcraft has provided the Court with no assurance that attorneys' fees were not improperly negotiated in the first instance—yet another sign that this settlement was not the product of arm's-length negotiations. *See* 4 *Newberg on Class Actions* § 13:50.

### C.     The relief provided for class members is woefully inadequate.

If the proposed settlement is approved, Grubhub would benefit tremendously while

10

restaurants receive *no* money, *no* notice, and *no* significant changes to Grubhub's business practices. Freshcraft claims that this settlement is nonetheless justified because class members "likely benefit financially from appearing on the Grubhub Platforms through increased traffic and sales and therefore suffered no monetary losses whatsoever." (Mot. at 16.) But it neglects to mention that under the Lanham Act, restaurants can recover the profits that Grubhub improperly reaped by using 150,000 restaurants' trademarks without authorization. 15 U.S.C. § 1117. The value of Grubhub's business increased by some $4 billion shortly after it started using the restaurants' trademarks without permission and so the value of that disgorgement remedy is likely to be massive. But the proposed settlement would require restaurants to release their claims without receiving a dime. *See* Settlement, ¶ 3.2.2. (releasing all equitable claims); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal.").

And yet that is not even the worst part of the settlement as far as many restaurants are concerned. What restaurants want most is for Grubhub to stop hurting their small businesses by listing them on its platform without their consent. As restaurants describe in their accompanying declarations, Grubhub's unauthorized use of their trademarks misleads consumers, generates unwanted orders that often can't be filled by the restaurants, and leads to unhappy customers who understandably blame the restaurants when their orders are cancelled or show up late and cold. (*See* Background, Section II, *supra*.) The proposed settlement would allow Grubhub to continue hurting restaurants by using their trademarks without permission and would bar restaurants from suing to stop Grubhub's ongoing infringement. (*See* Settlement, ¶¶ 3.1.1, 3.2.2.)

Grubhub is not agreeing to stop using restaurants' trademarks without permission—it is

11

agreeing *only* to create forms that restaurants can use to request that Grubhub remove them from its platform or post correct menus. (*Id.*, ¶ 3.1.1.) But as the parties concede, restaurants "have always had the ability to have their listings removed from the Grubhub Platforms by reaching out to Grubhub." (Mot. at 4, n.1.) The problem is that Grubhub often ignores those requests. (*See* Background, Section III, *supra*.) If this settlement is approved, restaurant owners have little doubt that Grubhub will continue to ignore their future requests as well. (*See, e.g.,* Bainton Decl., ¶ 5; Aranza Decl., ¶ 5; Douglass Decl., ¶ 5.) As the owner of Foraged Hyperseasonal Eatery put it, "I have no doubt I will encounter difficulties in convincing Grubhub to remove my restaurant from its platform. Even worse, my threats of a lawsuit will likely be ignored as this settlement will prevent me and other restaurants like mine from filing any lawsuit against Grubhub to stop them from listing my restaurant on its platform without my permission." (Amendola Decl., ¶ 5.)

The other changes Grubhub has agreed to make to its website are similarly cosmetic and are intended to preserve the status quo for Grubhub. (*See* Settlement, 3.1.1.) As far as consumers are concerned, there is little difference between "This restaurant is not accepting online orders," and "This restaurant is not accepting orders on Grubhub." If a restaurant is listed on Grubhub at all, customers are going to assume there is an affiliation. And if the Grubhub listing says a customer can't order from that restaurant through Grubhub, the customer is going to assume that they can't order from that restaurant at all. (Luu Decl., ¶ 7.) Similarly, if Grubhub is allowed to maintain a webpage for a restaurant that uses its name and logo without authorization, it does not matter if Grubhub sometimes refrains from using one particular meta tag (a hidden keyword that affected Google's search rankings years ago but no longer does). *See* https://developers.google.com/search/blog/2009/09/google-does-not-use-keywords-meta-tag ("Q:

12

Does Google ever use the 'keywords' meta tag in its web search ranking? A: In a word, no.") Customers who look for that restaurant online will still find Grubhub's page and still wrongly believe that it was authorized by the restaurant, and that the restaurant is working with Grubhub to provide customers with accurate, reliable, and timely food services.

The restaurants with whom Objectors' counsel have spoken about the settlement recognize it for what it is: a sham settlement that would effectively legalize Grubhub's conduct and prevent them from challenging it in the future. As the owner of First Seat in Bentonville, Arkansas, wrote in his declaration: "If this settlement goes through, it will allow Grubhub to legally use *our* name to build up *their* business, all without our permission. The settlement would allow Grubhub to continue engaging in this predatory behavior unhindered." (Walden Decl., ¶ 5.) The owner of Prosciutto's Pizzeria, Pub & Restaurant in Cornelius, North Carolina, feels similarly: "I don't understand how this settlement benefits restaurants. This settlement would just sanction and legalize Grubhub's current practices. Grubhub is hurting local mom and pop shops and that needs to stop." (Pfyffer Decl., ¶ 5.) And the owner of White Pine Pizza 2 likewise expressed frustration upon hearing about the settlement's terms: "I have tried unsuccessfully for almost a year to remove my restaurant's unauthorized listing. I am trying to run a business and have too many irons in the fire to have to police Grubhub, especially during a pandemic. I never asked to be listed in the first place and do not have time to argue with Grubhub." (Curry Decl., ¶ 7.)

A settlement that would strip more than a 150,000 restaurants of their right to enforce their own trademarks—and insulate the enormous profits Grubhub realized by using those trademarks without permission—for no more consideration than an "agreement to make certain superficial changes to its website, is an offense to the principle of due process so egregious as to render the

13

proposed settlement untenable even at this preliminary stage." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 88-89 (E.D.N.Y. 2007). Objectors accordingly request that the Court deny Freshcraft's motion for preliminary approval and permit restaurants to continue their quest for effective relief through the *Lynn Scott* class action. *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504–05 (D. Kan. 2012) ("the record does not show that the proposed settlement provides sufficient value or benefit to class members to justify releasing their class action claims").

### D. The settlement does not treat class members equitably.

The final factor that the revised Rule 23(e) requires courts to consider before approving a settlement is whether class members would be treated equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Here, most restaurants would receive *nothing* under the settlement: no money, no notice, no ability to exclude themselves from the settlement, and no right to ever sue to stop Grubhub's ongoing use of their trademarks. But only one restaurant—Plaintiff Freshcraft itself—will receive a payment ($5,000) under the settlement. (Settlement, ¶ 7.2.) It has become customary to pay class representatives extra compensation when they devote a great deal of time and energy to a successful representation of others in a similar situation. But courts become suspicious when absent class members are receiving nothing or only *de minimis* relief under the proposed settlement. 4 *Newberg on Class Actions* § 13:56. "Those circumstances suggest that the payment to the class representatives may not have been an incentive for them to invest effort in the class's litigation but rather an incentive for them to support a weak settlement." *Id.* That is exactly what is happening here and yet another reason why this settlement should not be approved. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) ("the fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that

14

the terms should not have been approved under Rule 23(e)").

## II.     The settlement cannot be approved without first notifying restaurants.

Freshcraft claims class notice is unnecessary here because "[t]here are no mandatory notice requirements in subsections (b)(1) and (b)(2) actions." (Mot. at 9 (quoting *Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008)). That is true at the *class certification* stage: Rule 23(c)(2) makes notice discretionary when a class is certified under Rule 23(b)(1) or (b)(2). But it is *not* true at the *settlement* stage. The recent amendments to Rule 23(e) provide that "[t]he court *must* direct notice … to all class members who would be bound" by a settlement proposal before it can approve that settlement. Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). As the leading treatise on class actions puts it, "settlement notice is mandatory in *all* types of class actions—those certified under 23(b)(1), (b)(2), (b)(3), or any combination thereof—and hence is distinguished from certification notice, which is only mandatory in (b)(3) class actions." 3 *Newberg on Class Actions* § 8:14.

Objectors ask that the Court immediately reject the proposed settlement as blatantly unfair to class members because it releases valuable claims for essentially no relief. But if the Court is inclined to set the matter for a final fairness hearing, due process requires that the 150,000 restaurants who would be bound by the settlement be notified and given an opportunity to object.

## CONCLUSION

Objectors respectfully request that the Court deny Freshcraft's motion for preliminary approval. The proposed settlement was not the result of adequate representation or arm's-length negotiations, and would strip 150,000 restaurants of valuable trademark claims without notice and for no money. It should be rejected as procedurally unfair, substantively inadequate, and inconsistent with due process.

15

Dated: May 7, 2021				Respectfully submitted,

				 /s/ *Michael D. Kuhn*
				Paul F. Lewis
				Michael D. Kuhn
				Andrew E. Swan
				**LEWIS | KUHN | SWAN PC**
				620 North Tejon Street, Suite 101
				Colorado Springs, CO 80903
				Telephone: (719) 694-3000
				Facsimile: (866) 515-8628
				plewis@lks.law
				mkuhn@lks.law
				aswan@lks.law

				Steven M. Tindall
				Geoffrey A. Munroe
				Alex J. Bukac
				**GIBBS LAW GROUP LLP**
				505 14th Street, Suite 1110
				Oakland, California 94612
				Telephone: (510) 350-9700
				Facsimile: (510) 350-9701
				smt@classlawgroup.com
				gam@classlawgroup.com
				ajb@classlawgroup.com

				Elizabeth A. Fegan
				**FEGAN SCOTT LLP**
				150 S. Wacker Dr.
				24th Floor
				Chicago, IL 60606
				Telephone: (312) 741-1019
				Facsimile: (312) 264-0100
				beth@feganscott.com

				*Counsel for Objectors Lynn Scott, LLC; The*
				*Farmer's Wife, LLC; Sir Flavius; Foraged*
				*Hyperseasonal Eatery; Crab on the Run; Autre*
				*Monde Cafe and Spirits; The Poke Beach;*
				*The Burgers; Banana Peppers Pizzeria; Red Plum*
				*Restaurant; La Esperanza Mexican Restaurant &*
				*Bar; Heirloom Salad Company and The Java House*

16

*Iowa City; White Pine Pizza 2; Alynia Zushi; Ar Lounge Inc. (Africa Restaurant and Lounge); Pugs Homemade Italian; TinyBrickOven; Lissy's Dough and Dairy; Tark's of Dania Beach; It's Greek to Us; Ashley Cakes; La Mesa Modern Mexican; Ragin Crawfish; MoMoBBQ; Duck City Bistro; Azucar Lounge; Prosciutto's Pizzeria, Pub & Restaurant; El Paraiso; Latke Love; Fish Cove; The First Seat; Old Crown Coffee Roasters*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 7, 2021, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Michael D. Kuhn*
Michael D. Kuhn

17