**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 20-cv-01327-NYW-NRN

CO CRAFT, LLC d/b/a Freshcraft, and
ARBORZ, LLC d/b/a The Piper Inn, on behalf of themselves and all others similarly situated,

      Plaintiffs,

LYNN SCOTT, LLC, and
THE FARMER'S WIFE,

      Plaintiff-Intervenors,

v.

GRUBHUB INC.,

      Defendant.

---

## ORDER ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

This matter is before the Court on the Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement (the "Motion" or "Motion for Preliminary Approval") [Doc. 76]. The Court has reviewed the Motion, the related briefing, the applicable case law, and the entire docket, and concludes that oral argument would not materially assist in the resolution of the matters herein. Accordingly, for the reasons set forth in this Order, the Motion for Preliminary Approval is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff CO Craft, LLC, doing business as Freshcraft ("Freshcraft"), initiated this class action lawsuit on May 11, 2020 against Defendant Grubhub, Inc. ("Defendant" or "Grubhub"). *See* [Doc. 1]. Freshcraft alleged that it was "a family[-]owned neighborhood beer bar and

restaurant" located in Denver, Colorado.  [*Id.* at ¶ 7].  It further alleged that Grubhub is "one of

the largest restaurant delivery services in the United States."  [*Id.* at ¶ 1].  Freshcraft alleged that

Defendant "has made and distributed, in interstate commerce and in this District, advertisements

that contain false or misleading statements of fact regarding their services and the services of many

restaurants, including those of [Freshcraft]," [*id.* at ¶ 45], including:

> a. Advertising that consumers can use Grubhub to order delivery or pickup from
> restaurants and/or omitting that Grubhub is not contracted or authorized to do so.
>
> b. Advertising that consumers can use Grubhub to find monthly deals for
> restaurants and/or omitting that Grubhub is not authorized to and does not actually
> display any monthly deals from these restaurants.
>
> c. Providing false information about the status of restaurants as "Closed" or "Not
> currently taking online orders" and/or omitting that those restaurants are open and
> taking online orders outside the Grubhub platform.

[*Id.* at ¶ 46].  Freshcraft alleged that these false statements violated the Lanham Act, 15 U.S.C.

§§ 1051 *et seq.*, [*id.* at ¶ 52], and raised claims on behalf of the following proposed class:

> All restaurants in the United States or its territories that Grubhub created landing
> pages for falsely advertising the restaurant as being closed or not accepting online
> orders when the restaurants were open and accepting online orders.  Excluded from
> the Class are (a) all persons who are employees, directors, officers, and agents of
> either Defendant [sic]; (b) governmental entities; and (e) the Court, the Court's
> immediate family, and Court staff.

[*Id.* at ¶ 35].  Freshcraft then filed an Amended Complaint proposing the following new class

definition:

> All restaurants in the United States or its territories that were listed or otherwise
> included by Grubhub on Grubhub platforms that did not have an unterminated
> contract, partnership, or other agreement to be listed or otherwise included on
> Grubhub platforms at any time from May 11, 2016, to the present.  Excluded from
> the Class are (a) all persons who are employees, directors, officers, and agents of
> either Defendant [sic]; (b) governmental entities; and (e) the Court, the Court's
> immediate family, and Court staff.

[Doc. 35-1 at ¶ 4].

The Parties agreed in September 2020 to attempt mediation to resolve their dispute. [Doc. 76 at 5]. They attended a virtual mediation on October 29, 2020, and then two additional full-day mediations on December 17, 2020 and January 8, 2021. [*Id.*]. Freshcraft filed a Notice of Settlement on February 24, 2021. [Doc. 36].

On March 18, 2021, Lynn Scott, LLC and The Farmer's Wife, LLC (collectively, "Intervenors") filed a Motion to Intervene. [Doc. 40]. The Intervenors sought leave to intervene "to protect their interests, including by conducting discovery into the adequacy of Freshcraft's representation of those interests and the fairness of the settlement negotiated on their behalf." [*Id.* at 1]. Relevant here, Intervenors had filed a class action complaint against Grubhub in the United States District Court for the Northern District of Illinois on October 26, 2020 (the "*Lynn Scott* case"). *See* [Doc. 40-1]. The complaint in the *Lynn Scott* case alleges violations of the Lanham Act based on Grubhub's alleged unauthorized use of restaurant names and logos. [*Id.* at ¶ 7]. The plaintiffs in the *Lynn Scott* case assert claims on behalf of the following class:

> All restaurants included without their permission on Grubhub, Seamless, LevelUp, AllMenus, MenuPages, or any other part of the Grubhub online platform[, excluding] . . . . Defendant, its current or former officers, directors, legal representatives, and employees; any and all parent companies, subsidiaries, predecessors, successors, or assigns of Defendant; and all judicial officers and associated court staff assigned to this case and their immediate family members.

[*Id.* at ¶¶ 97, 98]. Attached to the Motion to Intervene is a court order from the *Lynn Scott* case staying that case pending resolution of this action. *See* [Doc. 43-1]. Based on this Court's review of the *Lynn Scott* docket, that case remains stayed. *See Lynn Scott, LLC v. Grubhub, Inc.*, No. 20-cv-06334, ECF No. 57 (N.D. Ill. Oct. 18, 2022).

On April 16, 2021, Freshcraft filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement" (the "First Motion for Preliminary Approval"), which sought a Court order approving the Parties' proposed settlement and certifying the proposed settlement class,

among other requests.  [Doc. 47 at 3].  Intervenors opposed the First Motion for Preliminary Approval.  *See* [Doc. 52].

On July 28, 2022, the Honorable Regina M. Rodriguez granted the Intervenors' Motion to Intervene and denied the First Motion for Preliminary Approval without prejudice.  *See* [Doc. 63].[1] Judge Rodriguez noted that the Parties' proposed settlement included the release of the proposed class members' equitable claims but purported to exclude claims for monetary damages from that release.  [*Id.* at 8–9].  However, Judge Rodriguez explained, the *Lynn Scott* plaintiffs request disgorgement of profits, which is an *equitable* remedy under the Lanham Act.  [*Id.* at 11]; *see also* 15 U.S.C. § 1117(a).  Judge Rodriguez concluded that the Parties' proposed settlement, as it stood, "would likely preclude the *Lynn Scott* plaintiffs and putative class from pursuing monetary relief under the Lanham Act, particularly in the form of disgorgement of profits, which courts have held is relief that is equitable in nature."  [Doc. 63 at 13].  "For this reason," Judge Rodriguez concluded that there was an obvious deficiency in the Parties' understanding of the terms of the proposed settlement and denied the First Motion for Preliminary Approval.  [*Id.* at 12–13].

Freshcraft, alongside Arborz, LLC, doing business as The Piper Inn ("Piper Inn") (collectively, "Plaintiffs"), filed a Corrected Second Amended Class Action Complaint and Jury Demand (the "Second Amended Complaint"), with the consent of Defendant, on September 19, 2022.  *See* [Doc. 74]; *see also* [Doc. 73 at 1].[2]  The Second Amended Complaint contains the same definition of the proposed class as the First Amended Complaint.  *See* [Doc. 74 at ¶ 42].

---

[1] This case was originally assigned to the Honorable William J. Martínez.  *See* [Doc. 13].  Then, the case was reassigned to Judge Rodriguez on July 6, 2021 upon her appointment to the bench.  [Doc. 55].  The case was reassigned to the undersigned on August 8, 2022 upon her appointment as a United States District Judge.  [Doc. 70].

[2] Plaintiffs allege that Freshcraft ceased its operations on May 29, 2022.  [Doc. 74 at ¶ 7].  This issue is addressed briefly *infra*, Section V.

Plaintiffs filed the instant Motion on September 19, 2022. [Doc. 76]. Therein, they argue that the Parties have corrected the deficiency identified by Judge Rodriguez by amending their proposed agreement (the "Proposed Settlement Agreement") to clarify that the Parties' settlement does not release equitable claims for disgorgement of profits under the Lanham Act. [*Id.* at 6–7]. Having addressed the issue identified by Judge Rodriguez, Plaintiffs seek a Court order (1) preliminarily approving the Proposed Settlement Agreement, (2) certifying the proposed settlement class for settlement purposes only; (3) appointing class counsel; (4) appointing Piper Inn as class representative; (5) approving the Parties' proposed timeline and procedures for submissions of objections to the proposed settlement; and (6) setting a final fairness hearing before the Court. [*Id.* at 3–4].

The Intervenors again oppose the Motion for Preliminary Approval. *See* [Doc. 80]. Broadly, they argue that their interests were not adequately represented in the proposed settlement and that the relief contemplated in the Proposed Settlement Agreement is inadequate. *See generally* [*id.*]. In support, they have submitted declarations from 20 restaurant owners in opposition to the proposed settlement. *See* [Doc. 80-1 through Doc. 80-20]. Plaintiffs and Defendant separately replied to the Motion, *see* [Doc. 86; Doc. 87], and Intervenors were permitted leave to file a Surreply. [Doc. 89]. The matter is thus fully briefed, and the Court discusses the Parties' and Intervenors' arguments below.

## LEGAL STANDARDS

"Approval of a class action settlement takes place in two stages." *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018). At the first stage, the Court "preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the

settlement or opt out of the settlement." *Id.* "In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms." *Id.*

## I.    Class Certification

A class certified for settlement must fit within the certification requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). First, the class must meet the prerequisites set forth in Rule 23(a). That is, the party or parties seeking certification must demonstrate that the class is "so numerous that joinder of all members is impracticable," that there are "questions of law or fact common to the class," that the "claims or defenses of the representative parties are typical of the claims or defenses of the class," and that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). Next, the class must fit within the parameters of one of the types of class actions set forth in Rule 23(b). Where, as here, the parties seek certification under Rule 23(b)(2), this means that they must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Attention to these requirements "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem*, 521 U.S. at 620.

## II.   Approval of the Proposed Settlement Agreement

Under Rule 23, "once a class is certified, the action may not be settled, dismissed or compromised without Court approval." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009) ("*Motor Fuel I*"). A court may approve a proposed settlement

only if it finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In conducting this inquiry, the Tenth Circuit has instructed courts to consider whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*Tenille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1266 (10th Cir. 2004)) (alteration marks omitted) . In addition, Rule 23 sets out an additional four factors to consider in determining whether a settlement agreement is fair, reasonable, and adequate: (A) whether the class representative and class counsel have adequately represented the class; (B) whether the proposal was negotiated at an arm's length; (C) whether the relief provided for the class is adequate; and (D) whether the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). As noted by another court in this District, "[t]he Tenth Circuit's additional factors largely overlap" with the Rule 23(e)(2) factors, which "were not meant to displace any circuit's unique factors." *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-00304-WJM-NRN, 2021 WL 1387110, at *3 (D. Colo. Apr. 13, 2021). "[O]nly the fourth factor [is not] subsumed into the new Rule 23." *Id.* Accordingly, this Court "considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors." *Id.*; *see also In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (the Tenth Circuit stating that "a district court must consider" the Rule 23(e)(2) factors in assessing whether a settlement is fair, reasonable, and adequate, but also referencing the Tenth Circuit's additional factors).

These factors serve as a "useful guide at the preliminary approval stage," *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 502–03 (D. Kan. 2012) ("*Motor Fuel II*"), but the Court is mindful that "[t]he standards for preliminary approval of a class settlement are not as stringent as those applied for final approval." *Id.* at 492. Thus, courts "have developed a jurisprudence whereby they undertake *some* review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time." *Nieberding v. Barrette Outdoor Living, Inc.*, 2015 WL 1645798, at *4 (D. Kan. Apr. 14, 2015) (quoting 4 *Newberg and Rubenstein on Class Actions* § 13:10 (5th ed.). In practice, "[p]reliminary approval of a class action settlement . . . is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (quotation omitted); *see also Rodriguez v. 5830 Rest. Corp.*, No. 21-cv-01166-KLM, 2023 WL 1507195, at *3 (D. Colo. Feb. 3, 2023). A proposed class action settlement will be "preliminarily approved where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives.'" *Rodriguez*, 2023 WL 1507195, at *3 (quoting *Motor Fuel II*, 286 F.R.D. at 492 (alteration in original); *see also Nieberding*, 2015 WL 1645798, at *4 ("The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval."). With that said, preliminary approval "is not simply a judicial 'rubber stamp' of the parties' agreement." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). In addition, "a higher degree of scrutiny applies when determining the fairness of a settlement which is negotiated before class certification." *Motor Fuel II*, 286 F.R.D. at 492.

## ANALYSIS

### I.  Objecting at the Preliminary Approval Stage

As a preliminary matter, the Court first addresses the propriety of Intervenors' objections at the preliminary stage.  In its Reply, Defendant argues that the Intervenors' objections are premature and procedurally improper.  [Doc. 87 at 4].  According to Defendant, such objections should be raised at the final approval stage, not this provisional stage.  [*Id.*].  Intervenors do not respond to this argument in their Surreply.  *See* [Doc. 89].

A number of courts have concluded that "[o]bjections to a proposed class settlement are more appropriately adjudicated at the final approval hearing, as opposed to the preliminary approval stage."  *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2015 WL 13781535, at *6 (N.D. Cal. Mar. 25, 2015).  *See, e.g.*, *Davis*, 775 F. Supp. 2d at 608; *Chavez v. PVH Corp.*, No. C 13-01797 LHK, 2015 WL 12915109, at *3 (N.D. Cal. Aug. 6, 2015); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 CIV. 1145 KMW, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013); *Chi v. Univ. of S. Cal.*, No. 2:18-cv-04258-SVW-GJS, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019).  However, other courts have considered opposition arguments at the preliminary stage, including another court in this District.  *See Ross*, 323 F.R.D. at 659 (denying preliminary approval where "[t]he arguments raised by the proposed intervenors raise questions about whether the settlement is fair, reasonable, and adequate, . . . and whether the settlement was fairly negotiated" (quotation omitted)).  Thus, "[s]ome courts permit such objectors to be heard" at the preliminary stage, while "others defer such a hearing to the final approval stage."  4 *Newberg and Rubenstein on Class Actions* § 13:12 (6th ed. Dec. 2022 update) ("*Newberg*") (collecting cases).

The Court is mindful that the standards for preliminary approval are not as stringent as the standards for final approval, and furthermore, is cognizant that the Intervenors' objections may be

more appropriately addressed at a final fairness hearing, at which time the Court may hear argument and receive evidence from Intervenors *and* any other proposed class members with objections. With that said, the Court does not find it in the interest of judicial economy to simply disregard the arguments of Intervenors, as the Court is tasked with determining whether there are obvious deficiencies in the fairness, adequacy, or reasonableness of the Parties' proposed settlement and Intervenors' objections may be relevant to that determination. Indeed, "if a court waits until the final approval stage to thoroughly assess the fairness of the agreement, momentum could have a way of slanting the inquiry, in a manner that deprives the class members of the court protection that Rule 23 demands." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016). Accordingly, the Court will consider Intervenors' objections to assess whether they establish obvious deficiencies in the Proposed Settlement Agreement that preclude the Court from proceeding with preliminary approval, but is nonetheless mindful that many objections are likely best resolved at a fairness hearing supported by admissible evidence.

## II.      Preliminary Certification of the Class

### A.      Rule 23(a)

"A party seeking to certify a class bears the 'strict' burden of proving that the requirements of Rule 23 have been met." *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 3833412, at *2 (D. Colo. Mar. 8, 2020) (quoting *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)). Plaintiffs request that the following class be conditionally certified:

> All restaurants, convenience stores, markets, grocery stores, and other food service businesses in the United States or its territories that were listed or otherwise included by Grubhub on Grubhub Platforms that did not have an unterminated contract, partnership, or other agreement to be listed or otherwise included on Grubhub Platforms at any time from May 11, 2016, until the Settlement Effective Date. Specifically excluded are the following Persons:
>
> (i) all persons who are employees, directors, officers, or agents of Grubhub;

(ii) government entities; and

(iii) the Court, the Court's immediate family, and Court staff.

[Doc. 76 at 11].  The Court notes, however, that this definition is different from the class proposed in the Second Amended Complaint, wherein Plaintiffs state that bring claims on behalf of:

> All restaurants in the United States or territories that were listed or otherwise included by Grubhub on Grubhub platforms that did not have an unterminated contract, partnership, or other agreement to be listed or otherwise included on Grubhub platforms at any time from May 11, 2016, to the present. Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of either Defendant [sic]; (b) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

[Doc. 74 at ¶ 42].  Thus, the proposed class definition in the Motion for Preliminary Approval expands the putative class from only restaurants appearing on Grubhub platforms to restaurants, convenience stores, markets, grocery stores, and other food service businesses.  Plaintiffs do not address this discrepancy in their Motion.  *See generally* [Doc. 76].  While the Intervenors contend that this action was expanded to include and settle trademark claims only after the *Lynn Scott* case was filed, they do not challenge the expanded definition of the class in the context of whether such class should be preliminarily certified under Rule 23(a).  [Doc. 80 at 10].  Indeed, Intervenors raise no argument in opposition to conditional class certification, limiting their arguments to preliminary approval of the Proposed Settlement Agreement.  *See generally* [*id.*].

Courts are split on whether a plaintiff is bound by the proposed class definition contained in the operative pleading.  *Compare, e.g.*, *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014) ("Generally, a plaintiff may only seek to certify a class as defined in a complaint—courts will not certify classes different from, or broader than, a class alleged in the complaint without plaintiff moving to amend the complaint.") *with Schultz v. Midland Credit Mgmt., Inc.*, No. CV 16-4415, 2020 WL 3026531, at *4 (D.N.J. June 5, 2020) ("A

plaintiff may amend the proposed class definition at the class certification stage.").  The small number of district courts within this Circuit to have addressed this issue have followed the latter line of cases.  *See, e.g.*, *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017) ("[T]he Court concludes that a plaintiff is not bound to the class definition in the operative complaint for purposes of a second motion to certify a class."); *Spencer v. Mental Health Res., Inc.*, No. 1:21-cv-00121-MIS-JHR, 2022 WL 3031839, at *6 (D.N.M. Aug. 1, 2022) (conditionally certifying a collective action "as defined in" the plaintiff's reply brief); *cf. Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 394–95 (D. Colo. 2010) (observing that a court "is not bound by the class definition proposed in the complaint, . . . and, thus, may refine the suggested definition if necessary" (quotation omitted)).  The Court notes that Rule 23 contemplates that an order granting class certification "may be altered or amended before final judgment," Fed. R. Civ. P. 23(c)(1)(C), which suggests that a plaintiff's modification of a class definition should "not forestall the Court's class certification inquiry."  *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-07995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013).  The Court also notes that Defendant does not oppose the Motion for Preliminary Approval, *see* [Doc. 76 at 1], and Intervenors raise no issue with the proposed class definition.[3]  *See generally* [Doc. 80].  Accordingly, the Court proceeds with its certification analysis using the proposed definition contained in the Motion for Preliminary Approval (the "Proposed Class"), and must determine whether this Proposed Class meets the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.

  ***Numerosity***.  Rule 23(a) requires that the class be so numerous that the alternative of joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  "'Impracticable' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining

---

[3] Indeed, the Intervenors fall within the category of "restaurants," not within the categories of "convenience stores, markets, grocery stores, or other food service businesses."

all members of the class." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125-26 (D. Colo. 2016) (quotation omitted).   The Tenth Circuit has "never adopted" a presumption of numerosity at a certain number of claimants.   *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).   Instead, "because it is such a fact-specific inquiry, [the Tenth Circuit] grant[s] wide latitude to the district court in making this determination."   *Id.*

Plaintiffs state that Grubhub provided information prior to the Parties' mediation "evidencing that there are tens of thousands [of] proposed Settlement Class Members" and argue that the numerosity requirement is "plainly satisfied."   [Doc. 76 at 25].   This Court also agrees that the numerosity requirement has been met.   *See In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *1 (D. Colo. Feb. 15, 2017) (finding a class of "hundreds, if not thousands, of persons" sufficiently numerous to warrant class certification), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017); *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-cv-00124-WJM-SKC, 2021 WL 3021461, at *2 (D. Colo. July 16, 2021) (same).

***Commonality***.   Next, Rule 23 requires that there be "questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   "A finding of commonality requires only a single question of law or fact common to the entire class."   *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194–95 (10th Cir. 2010).   Commonality exists when the class members have "'suffered the same injury' such that the claims of the class are based on a common contention" and the determination of that contention will resolve the central issue.   *Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2020 WL 7319081, at *4 (D. Colo. Dec. 11, 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).   "What matters to class certification . . . is not the raising of common

'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

Plaintiffs assert that "[their] claim, and those of the proposed Settlement Class, . . . arise from common questions involving Grubhub's inclusion of Covered Restaurants on its Platforms" and that "there are few, if any, individualized factual or legal issues that would require a determination, either by the Court or by the finder of fact." [Doc. 76 at 26].[4]  Here, Plaintiffs allege that Grubhub is "knowingly employing a nationwide false advertising campaign to steer patrons to its partner restaurants by falsely declaring that its competitors are closed or not accepting online orders when they are in fact open for business," [Doc. 74 at ¶ 1], that Grubhub's "uniform conduct is equally applicable to the class," [*id.* at ¶ 3], and that this conduct violates the Lanham Act.  [*Id.* at ¶ 60].  The Court agrees that questions of fact—whether Grubhub wrongfully advertised that businesses were closed and not accepting orders—and law—whether this conduct violates the Lanham Act—exist across the Proposed Class members' claims.  Thus, the Court is satisfied that the commonality requirement is met.

***Typicality***.  Rule 23(a)'s typicality requirement mandates that the claims or defenses of the class representatives be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).

---

[4] Plaintiffs also contend that their claim arises from the same common questions of fact and law as "the claim brought by Plaintiff-Intervenors in the [*Lynn*] *Scott* Action."  [Doc. 76 at 26]. Intervenors appear to agree, *see* [Doc. 80 at 16], and filed their Class Action Complaint as an exhibit to their Motion to Intervene, in which they also challenge Grubhub's inclusion of unaffiliated restaurants on their website and mobile apps without permission. *Compare* [Doc. 40-1 at ¶ 2 (alleging that "Grubhub began researching which restaurants were most popular with consumers—and then added those restaurants to its platform without permission")] *with* [Doc. 74 at ¶ 18 (alleging that "[f]or most restaurants in major metropolitan cities, Grubhub has spent time and effort to create restaurant landing pages with menu items for all restaurants, including those that do not do business with Grubhub.")].  But this Court notes that the Second Amended Complaint in this action does not appear to include factual allegations required for trademark infringement. *See generally* [*id.*].

"The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence." *Martinez*, 2020 WL 7319081, at *5. "Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Devaughn*, 594 F.3d at 1198–99.

According to Plaintiffs, their claim is typical of the Proposed Class because the claim "stems from the same common course of conduct as the claim of the proposed Settlement Class as a whole." [Doc. 76 at 26].[5]  The Court agrees that Plaintiffs' claim is typical of a class of businesses "that were listed or otherwise included by Grubhub on Grubhub platforms that did not have an unterminated contract, partnership, or other agreement to be listed or otherwise included on Grubhub platforms." *See* [Doc. 74 at ¶ 42; Doc. 76 at 11]. Thus, the Court is satisfied that the commonality requirement is met.

*Adequacy*.[6]  Finally, Plaintiffs must demonstrate that the class representative will "fairly and adequately protect the interests of the class" to demonstrate that class certification is

---

[5] *See supra* n.4.

[6] Although Intervenors argue that class member restaurants' interests were not adequately represented in this case, they do so only in the context of preliminary approval of the Proposed Settlement Agreement. *See* [Doc. 80 at 13–17]. Thus, the Court addresses Intervenors' arguments with respect to adequacy of representation below, in the context of determining whether the Proposed Settlement Agreement is fair, reasonable, and adequate. *See United States v. Davis*, 622 Fed. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

warranted. Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has directed that "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter v. Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). The "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (quotation and alteration marks omitted). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998) (citation omitted).

Plaintiffs request that this Court appoint Piper Inn as class representative. [Doc. 76 at 4]. They argue that Piper Inn's claim is entirely typical of the other class members' claims and that Piper Inn has no conflict of interest with the Proposed Class members. [*Id.* at 27]. There is no indication in the record that there is an obvious interclass conflict, and the Court has agreed that Piper Inn's claim is typical of the class, such that the class representative has overlapping interests with the class members. Accordingly, the Court finds that Piper Inn adequately represents the interests of the putative class members, subject to later possible reconsideration. And, as a result, the Court concludes that Plaintiffs have met their burden of showing that each of Rule 23(a)'s requirements have been met.

**B.      Rule 23(b)**

Next, Plaintiffs must demonstrate that class certification is proper under Rule 23(b). Plaintiffs proceed under Rule 23(b)(2), *see* [*id.* at 29], which provides that a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "By its terms, . . . Rule 23(b)(2) imposes two independent but related requirements." *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). First, "the defendant['s] actions or inactions must be based on grounds generally applicable to all class members." *Id.* Second, the requested injunctive relief must be "appropriate for the class as a whole." *Id.* (emphasis omitted). The Tenth Circuit has explained that Rule 23(b)(2) "demands a certain cohesiveness among class members with respect to their injuries"—namely, that the class must be sufficiently cohesive so that any class-wide injunctive relief will satisfy the requirements of Rule 65(d), and class-wide relief must not be precluded by a need to provide specifically tailored relief to each class member. *Id.*

Plaintiffs contend that the Rule 23(b)(2) requirements are met here because the proposed settlement class members all appear on Grubhub platforms without a contractual relationship with Grubhub, and the Proposed Settlement Agreement "provides highly beneficial injunctive relief to the proposed Settlement Class as a whole," applying uniformly to the Proposed Class as a whole, such that relief tailored to specific class members is not necessary. [Doc. 76 at 29–30]. The Court concludes that the Proposed Class is sufficiently cohesive such that any class-wide injunctive relief would satisfy the requirements of Rule 65(d) and that the class members' injuries can be remedied in a single injunction. *Devaughn*, 594 F.3d at 1199–1200. The Court concludes that Rule 23(b)(2)'s requirements are met here.

Having concluded that the requirements of class certification under Rule 23 have been met, the Court will **GRANT** Plaintiffs' Motion insofar as it seeks conditional certification of the Proposed Class and seeks conditional appointment of Piper Inn as class representative.

## III.   Appointing Class Counsel

A court that certifies a class must also appoint class counsel.  Fed. R. Civ. P. 23(g)(1).  In so doing, the Court considers the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions or other complex litigation, as well as the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," and "may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs."  Fed. R. Civ. P. 23(g)(1)(B)–(C).  In addition, the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).

Plaintiffs request that Laura L. Sheets of Liddle Sheets Coulson P.C. and Ross Ziev of the Law Offices of Ross Ziev, P.C. be appointed class counsel.  [Doc. 76 at 28].  In support, they represent that counsel have "performed a great deal of work in both identifying and investigating the claim in this action" and have "decades of experience litigating complex class litigation and class actions involving claims of the type asserted in this action."  [*Id.*].  They provide additional information with respect to Ms. Sheets, representing that she "practices exclusively in complex class litigation and has litigated, successfully resolved, and administered hundreds of class action

settlements." [*Id.*].  They provide no additional information with respect to Mr. Ziev's experience litigating class action lawsuits.  *See* [*id.* at 28–29].

The Court concludes that appointment of <u>interim</u> class counsel is appropriate here, with the final decision on appointment of counsel to be made at the final approval stage.  *See Cikra v. LaMi Prod., LLC*, No. 2:15-cv-06166-WB, 2016 WL 9776075, at *1 (E.D. Pa. Aug. 8, 2016) (appointing interim class counsel and stating that the court "will make its final decision regarding the appointment of class counsel during or after the final approval hearing . . . based upon counsel's subsequent submissions and arguments.").  The Court notes that, while Plaintiffs have represented in their Motion that Ms. Sheets is well-versed in complex litigation, their representations are unaccompanied by any sort of declaration from Ms. Sheets setting out her specific litigation experience.  Moreover, Plaintiffs have not provided any of the information required by Rule 23(g) with respect to Mr. Ziev.  However, the Court notes that the appointment of class counsel is not opposed by Defendant or Intervenors, and it appears from this Court's review of the docket that Ms. Sheets is lead counsel in this case.  Accordingly, the Court will provisionally appoint Ms. Sheets and Mr. Ziev as interim class counsel for purposes of this class action settlement.  *See Loreto v. Gen. Dynamics Info. Tech., Inc.,* No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *6 (S.D. Cal. May 7, 2021) (provisionally appointing class counsel even where the plaintiff "[did] not specifically point to the factors enumerated in Rule 23(g)").  However, Plaintiffs are **ADVISED** that should this case reach the final approval stage, they will be expected to specifically address the Rule 23(g) factors and explain why final appointment of class counsel is appropriate with respect to *all* counsel seeking appointment.  "In the event the court ultimately denies final approval of the parties' proposed settlement agreement, the court's preliminary certification of the

class and provisional appointments of class counsel and class representative shall be vacated." *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021).

## IV. Preliminary Approval of the Settlement

Next, Plaintiffs request that the Court preliminarily approve the Parties' proposed settlement. *See* [Doc. 76 at 17].

### A. The Proposed Settlement Agreement

Plaintiffs have submitted a copy of the Parties' Proposed Settlement Agreement [Doc. 76-1] and the Court summarizes it briefly here. The Proposed Settlement Agreement contemplates only injunctive relief for the Proposed Class; specifically, the Proposed Settlement Agreement provides that Grubhub shall implement the following practices within 90 days after the Court's final approval of the settlement: (1) Grubhub will "create a page that hosts a self-help form or forms" that will enable class members to (a) claim ownership of their business; (b) request updates as to the information listed on the class members' landing pages; and (c) request removal from Grubhub platforms; (2) Grubhub will ensure that landing pages do not state without qualification that businesses are not accepting online orders, unless otherwise indicated by the class members; (3) Grubhub will amend its terms of use to provide that "mobile app users should install the latest version of the mobile app for the most up-to-date information"; (4) Grubhub will add information to business-facing Frequent Asked Questions; (5) Grubhub "will add a disclaimer to Landing Pages"; and (6) to the extent within its control, Grubhub will not including language under "an HTML <meta> element" that states that it is offering services in connection with a restaurant that it is not offering. [Doc. 76-1 at ¶ 3.1.1].

In exchange, the class members agree to release

any and all claims or causes of action under any theory for injunctive, other equitable, or declaratory relief, whether known or unknown, asserted or unasserted,

existing or suspected or unsuspected, matured or unmatured, under federal, state, or local law, sounding in tort, contract, statute, or otherwise, that relate in any way to alleged false, inaccurate, or misleading statements, advertisements, or representations, or use of any Settlement Class Member's names, logos, or other intellectual property by any one or more of [Grubhub]. The [released claims] include any and all claims for injunctive, other equitable, or declaratory relief under the Lanham Act or other federal, state, or local laws, except for claims for disgorgement of profits (if any) under the Lanham Act, and any claims for injunctive, other equitable, or declaratory relief, except for claims for disgorgement of profits (if any) under the Lanham Act, that arise out of or relate in any way to the transactions, occurrences, events conduct, practices, or policies alleged or that could have been alleged, in the Action or any other action alleging similar claims that has been brought, could have been brought, or is currently pending in any court or arbitration proceeding, except for claims for disgorgement of profits (if any) under the Lanham Act. The [released claims] expressly exclude any claims for actual damages or for disgorgement of profits (if any) under the Lanham Act.

[*Id.* at ¶ 3.2.2]. In addition, Plaintiffs agree to release "claims, causes of action, damages (whether actual, compensatory, statutory, punitive, or of any other type), penalties, losses, or demands, whether known or unknown, asserted or unasserted, existing or suspected or unsuspected, matured or unmatured, under federal, state, or local law, sounding in tort, contract, statute, or otherwise." [*Id.* at ¶ 3.2.1]. The Parties agree that Plaintiffs may move for a service award not to exceed $5,000 each, and Grubhub agrees that it will not oppose a request for a service award up to $5,000 for each Plaintiff. [*Id.* at ¶ 7.2]. Grubhub also agrees that it will not oppose a request of reasonable attorneys' fees, costs, and expenses not to exceed $450,000. [*Id.* at ¶ 7.1].

###   B.    Presumption of Fairness

As a preliminary matter, Plaintiffs argue that the Proposed Settlement Agreement is entitled to a presumption of fairness because "[t]he negotiations have at all times been conducted at arm's length and Plaintiffs and the Proposed Class Counsel have vigorously represented the interests of the proposed Settlement Class to obtain a settlement that provides substantial benefits." [Doc. 76 at 19]. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel *after meaningful*

*discovery.*'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litig., Third, § 30.42 (1995) (emphasis added)); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (recognizing an "initial presumption of fairness" where, *inter alia*, "there was sufficient discovery").  Courts in this District have followed this principle, applying a presumption of fairness to settlements obtained after extensive litigation.  *See, e.g.*, *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-cv-02757-WYD-KMT, 2015 WL 5695890, at *3 (D. Colo. Sept. 29, 2015) ("Because the settlement resulted from arm's-length negotiations between experienced counsel *after both parties conducted discovery*, *after a significant number of motions were brought and contested*, and after extensive prior settlement discussions failed, the settlement should be presumed to be fair and adequate.") (emphasis added); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel *after significant discovery had occurred*, the Court may presume the settlement to be fair, adequate, and reasonable.") (emphasis added).

Plaintiffs argue that their counsel "ha[ve] made a thorough investigation of the facts and circumstances surrounding the allegations asserted in this action and have engaged in investigation and discovery of the claim asserted therein."  [Doc. 76 at 9].  In support, Plaintiffs direct the Court to the Proposed Settlement Agreement, which states that Plaintiffs' counsel

> have conducted a thorough examination and investigation of the facts and law relating to the claim and defenses in the Action, including, but not limited to, examining documents produced by Grubhub; obtaining information from publicly available and other sources; and researching and preparing Court filings, mediation statements, and other documents concerning the claim.

[Doc. 76-1 at 3, § F].  However, formal discovery never commenced in this action and a Scheduling Order was never entered, and Plaintiffs' representations are insufficient for the Court to determine

whether any informal discovery exchanged in this action was "meaningful." *See generally* [Doc. 76 at 9]. Accordingly, the Court declines to apply a presumption of fairness to the proposed settlement. *See Wilson v. DirectBuy, Inc.*, No. 3:09-cv-590JCH, 2011 WL 2050537, at *4 (D. Conn. May 16, 2011) ("[I]n light of the early stage of the litigation and no formal discovery, a presumption of substantive fairness does not appear appropriate at this point."); *Martin*, 295 F.R.D. at 386 n.6 ("Where, as here, the precise nature of the parties informal exchange of information is not presented to the Court, and where no formal discovery has taken place, it is highly doubtful that a presumption of fairness should apply." (quotation omitted)).

## C. Whether the Proposed Settlement is Fair, Reasonable, and Adequate

The Court next turns to the propriety of the proposed settlement, taking into consideration whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposed settlement treats class members equitably. Fed. R. Civ. P. 23(e)(2)(A)–(D).

### 1. Adequacy of Representation

First, the Court must determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008). Plaintiffs argue that Freshcraft "engaged in extensive investigation prior to and after filing this action, as well as pre-certification negotiation with Grubhub, followed by three full days of mediation with a qualified neutral." [Doc. 76 at 23]. Plaintiffs contend that Freshcraft has adequately represented the class members' interests and "Plaintiff Piper Inn will adequately do so going forward." [*Id.*]. Additionally, they

contend that proposed class counsel have performed "a great deal of work in both identifying and investigating the claim in this action."  [*Id.*].

Intervenors disagree, arguing that class members' interests were not adequately represented in the settlement because (1) "Plaintiffs' counsel was prepared to release restaurants' valuable disgorgement claims for no money"; (2) Plaintiffs' counsel "remains willing to agree to an overly broad release"; (3) "Plaintiffs' counsel have not vigorously prosecuted the case or conducted sufficient discovery to allow for a fair settlement"; and (4) Piper Inn "has not shown it adequately represented class members' interests."  [Doc. 80 at 13–17].

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  Thus, as mentioned above, "[d]etermining adequacy of representation turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class."  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) ("*Motor Fuel III*").  Intervenors do not contend that Plaintiffs or Plaintiffs' counsel has any conflicts of interest with other class members; accordingly, the Court assumes that Intervenors' various challenges fall within the scope of the second inquiry—vigorous prosecution on behalf of the class.

First, Intervenors argue that adequate representation is lacking because "Plaintiffs' counsel was prepared to release restaurants' valuable disgorgement claims for no money." [Doc. 80 at 13]. The basis of Intervenors' argument is the denial of the First Motion for Preliminary Approval; they contend that "[a]dequate class counsel would have understood what it meant to release all equitable claims and would have known that the Lanham Act's disgorgement-of-profits remedy is an equitable remedy." [*Id.* at 14].

The Court is unpersuaded by this argument. The deficiency referenced by Intervenors has been addressed by Judge Rodriguez and, according to the Parties, remedied in their renewed Motion and Proposed Settlement Agreement. Taking Intervenors' argument to its logical conclusion, no court would ever preliminarily approve a proposed settlement after denying a previous request for preliminary approval, and the Court declines to hold that settlement is no longer an available option for the Parties based on the mere fact that the First Motion for Preliminary Approval was denied. Such a result contravenes the very purpose of *preliminary* approval, which is to determine, *inter alia*, whether there are "obvious deficiencies" in the settlement. *Rodriguez*, 2023 WL 1507195, at *3.

Next, Intervenors argue that there is no adequacy of representation because "Plaintiffs' counsel remains willing to agree to an overly broad release." [Doc. 80 at 15]. Specifically, they contend that the release in the Proposed Settlement Agreement "releases all other equitable claims under all other laws—including claims for restitution, civil penalties, and disgorgement of profits under state or municipal consumer protection laws." [*Id.*]. They further assert that restaurants may wish to pursue similar relief under state or municipal consumer protection laws and should not be prevented from doing so by the release contained in the Proposed Settlement Agreement. [*Id.*]. Intervenors cite no legal authority in support of their argument that the scope of the release renders counsel's representation inadequate. *See* [*id.*].

In response, the Parties filed a Stipulation wherein they state that it "is the purpose, intent, and their mutual understanding of the Amended Settlement that Settlement Class Members shall retain any and all claims for monetary relief, whether in the form of damages, restitution, disgorgement, or any other form." [Doc. 85 at 1]. In their Surreply, Intervenors argue that notwithstanding the Parties' clarified understanding of the Proposed Settlement Agreement, the

Proposed Settlement Agreement would still necessarily release those claims, and "it would be preferable to rewrite the release itself to affirmatively ensure that all claims for monetary relief are preserved." [Doc. 89 at 3].

The Court notes that Intervenors' arguments go toward what they believe are issues in the *substance* of the Proposed Settlement Agreement, framed as a challenge to counsel's ability to adequately represent the putative class. But "the adequacy requirement assures that counsel possesses adequate experience, will vigorously prosecute the action, and will act at arm's length from the defendant," *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 389 (3d Cir. 2015), and "[t]he fact that [objectors] do not approve of the settlement terms does not, of itself, demonstrate that [the class representative] and class counsel provided inadequate representation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995). However, courts have also concluded that terms of a settlement may support an inference of insufficient representation where the settlement is "*so unreasonable* that it evidences inadequate representation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 236 (2d Cir. 2016) (emphasis added).

The Court concludes that the Parties' Stipulation and clarification assuages, *at the preliminary stage*, any concerns of inadequate representation raised by Intervenors. However, the Court does agree with Intervenors that the Parties' Stipulation, filed on the docket but not reflected in the Proposed Settlement Agreement, would have an indeterminable impact on the Proposed Settlement Agreement should disputes as to its terms arise in future, unrelated litigation. Courts do not have the authority to modify the terms of proposed settlement agreements, *see Evans v. Jeff D.*, 475 U.S. 717, 726 (1986) ("Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties

before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."), but "some courts hold that a court may make preliminary approval contingent upon modifications in the settlement agreement." 4 *Newberg*, § 13:12. *See, e.g.*, *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) ("[T]he court preliminarily approves [the settlement], contingent on some minor modifications as described below."); *In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 2680566, at *3 (W.D. Wash. July 8, 2011) ("[T]he court's approval is conditioned upon the parties agreeing (if they have not already) to the additional revisions to the revised settlement agreement that they presented to the court at the July 7, 2011 hearing."). Accordingly, while the Court does not find that denial of the Motion is warranted on this basis, if the Court finds that the Proposed Settlement Agreement is otherwise entitled to preliminary approval, the Court may condition its preliminary approval on the Parties' revision of the Proposed Settlement Agreement to clearly align with their Stipulation. *Cf.* Fed. R. Civ. P. 1.

In the alternative, Intervenors next assert that Plaintiffs' counsel "have not vigorously prosecuted the case or conducted sufficient discovery to allow for a fair settlement." [Doc. 80 at 15]. They explain that extensive discovery and motions practice prior to settlement may permit a court to "fairly conclude that the parties have a good understanding of the strengths and weaknesses of their case and that the settlement's terms are based on an adequate information base." [*Id.* at 15–16]. But because there was little to no formal discovery in this case, Intervenors contend that counsel have "abdicated their responsibility to absent class members and failed to adequately represent their interests." [*Id.* at 16].

Intervenors cite no legal authority suggesting that adequacy of representation is *always* lacking where there was little discovery or motions practice prior to reaching a settlement

agreement.  *See generally* [*id.*].  This sort of blanket rule "would frequently *undermine* the opportunity for settlement, because discovery costs can diminish a defendant's incentive to settle." *Martin*, 295 F.R.D. at 386.  To be sure, "[c]lass actions certified solely for settlement, particularly early in the case, sometimes make meaningful judicial review more difficult and more important." Manual for Complex Litig. § 21.612 (4th ed. May 2022 update).  Cases settled during the early stages of litigation require "closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process." *Id.*  But this Court has already explained that this settlement, which was achieved prior to class certification, is subject to heightened judicial scrutiny, *Motor Fuel II*, 286 F.R.D. at 492, and the Court has already declined to apply a presumption of fairness to the Proposed Settlement Agreement due to the lack of discovery in this case.  *See supra* Section IV.B.  In other words, this Court has applied the appropriate approval standards to account for the lack of formal discovery in this case, and the lack of formal discovery is not an outright bar to preliminary approval.

Furthermore, "[c]ourts have preliminarily approved class action settlements where the litigation is in its early stages and minimal discovery has occurred." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 199 n.6 (E.D. Pa. 2014).  *See, e.g.*, *Kaufman v. Am. Express*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012).  "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Here, Plaintiff represents that prior to the Parties' mediation, "Plaintiff submitted

extensive pre-mediation discovery requests to Grubhub to which Grubhub provided responses" and that "Plaintiff and Grubhub exchanged numerous confidential settlement communications outlining their respective positions."  [Doc. 86 at 3].   This exchange of informal discovery diminishes, at this *preliminary* stage, any concerns about the adequacy of representation.  *See Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *6 ("While it is certainly beyond dispute that no discovery, class related or otherwise, has taken place in this case, the contours of this litigation are not a mystery."); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (granting final approval where no formal discovery occurred but where "Class Counsel had significant information going into the settlement negotiations").  Moreover, the Court notes that Intervenors have not identified in their objections any specific issue purportedly created by the lack of formal discovery and have not asserted any argument identifying a specific benefit that additional discovery would provide to this case.  *See generally* [Doc. 80 at 16]; *cf. Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *6 (rejecting argument that further discovery was necessary before class certification where the defendants "fail[ed] to explain how further investigation will inure to the benefit of the proposed class.").  To the extent Intervenors continue to argue that the lack of formal discovery renders the Proposed Settlement Agreement unfair, inadequate, or unreasonable, it can raise such arguments, with supporting evidence, at the final fairness hearing.

Finally, Intervenors argue that putative class members' interests are not adequately represented in the Proposed Settlement Agreement because Piper Inn "has not shown it adequately represented class members' interests."  [Doc. 80 at 16].  The basis of their argument is that the same day that Piper Ann became a party to this case, it agreed to settle its claim.  [*Id.* at 16–17].  Intervenors contend that "[t]here is no evidence that Piper Inn performed any substantial work to justify a $5,000 [incentive] payment, that it meaningfully participated in the negotiation of the

amended settlement, or that it otherwise discharged the responsibilities of a class representative." [*Id.* at 17]. Intervenors' argument is not supported by any citations to legal authority. *See* [*id.*].

"The Ninth Circuit has emphasized 'district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives'" because "[c]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *6 (E.D. Cal. Jan. 11, 2017) (quoting *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)). But Intervenors have not argued that the $5,000 incentive award suggests a conflict of interest, *see generally* [Doc. 80], and the Court will not raise arguments on behalf of Intervenors that they have not raised themselves. *Davis*, 622 F. App'x at 759. In any event, some courts have concluded that courts "retain[] the discretion to reduce the amount of [a] requested service award if it finds that the award would be excessive when compared to the expected recovery of absent class members." *Kimbo v. MXD Grp., Inc.*, No. 2:19-cv-00166-WBS-KJN, 2021 WL 492493, at *11 (E.D. Cal. Feb. 10, 2021).[7] Accordingly, absent any meaningful argument with supporting legal authority from Intervenors, the Court does not find that the $5,000 proposed service fee award to Piper Inn requires denial of the Motion for Preliminary Approval.

In sum, the Court concludes that Intervenors have not demonstrated any obvious deficiencies in the adequacy of representation in this case. This factor thus weighs in favor of preliminary approval.

---

[7] While the Court has no authority to amend the Parties' settlement agreement, *see Evans*, 475 U.S. at 726, the Court notes that the Proposed Settlement Agreement does not state that each Plaintiff will receive $5,000; rather, it says that Plaintiffs may move for such an award, and Defendant will not oppose such a request. [Doc. 76-1 at ¶ 7.2].

2.      **Arm's Length Negotiations**

Plaintiffs contend that the Proposed Settlement Agreement "represents an arm's-length compromise that is the result of extensive pre-certification investigation and negotiation, followed by three full days of mediation with a qualified and experienced neutral." [Doc. 76 at 18]. They contend that, at all times, Plaintiffs and proposed class counsel "vigorously represented the interests of the proposed Settlement Class to obtain a settlement that provides substantial benefits." [*Id.* at 19]. In support, Plaintiffs have submitted a declaration from the mediator who presided over the Parties' mediations, wherein she avers that "[b]ased on [her] involvement in the parties' mediations, [she] can say that the negotiations were fair, at arms' length, and in good faith." [Doc. 86-2 at ¶ 6].

Intervenors do not expressly argue that the proposed settlement is not the product of an arm's length negotiation, but they do argue that the proposed settlement "bears the hallmarks of a collusive, reverse-auction settlement." [Doc. 80 at 17]. Furthermore, they contend that there are indicators of self-dealing in the Proposed Settlement Agreement, such as a "'kicker' agreement" and a "'clear sailing' agreement," which they contend warrant heightened scrutiny from the Court. [*Id.* at 18]. And finally, they contend that the Parties' "conduct after their last unsuccessful mediation . . . includes several examples of apparent collusion." [*Id.*].

*Reverse Auction*.   In a reverse auction, "a defendant, seeing competing class cases, cherrypicks the attorneys willing to accept the lowest class recovery, in exchange for enhanced fees." *Ross*, 323 F.R.D. at 660 (quoting *Martin*, 295 F.R.D. at 388). In *Ross*, the court concluded that the proposed settlement raised red flags as to whether it was the product of a reverse auction because "the proposed settlement agreement significantly broaden[ed] the class that plaintiff initially sought to represent, thereby diluting the original Colorado class members' potential

recovery, and provide[d] for the release of similar claims in numerous pending class actions, all to [the] defendants' benefit." *Id.* at 660–61. While the court noted that there was no actual evidence of a reverse auction, "given the dramatic effect that expansion of the proposed class ha[d] on [the defendant's] liability exposure nationwide," the court concluded that it needed "more information on the parties' course of conduct in reaching the proposed settlement" and denied the motion for preliminary approval without prejudice. *Id.* at 661.

Intervenors argue that *Ross* is analogous to this case because

> Plaintiffs' counsel initially sought to represent only restaurants like Freshcraft that Grubhub falsely advertised as closed or not accepting online orders. But it agreed to settle on behalf of the much larger class of 150,000+ restaurants whose trademarks were used on Grubhub's platform without consent. The release was then specifically drafted to include claims related to "use of any Settlement Class Member's names, logos, or other intellectual property"—the subject of the claims filed against Grubhub in the [*Lynn Scott* case].

[Doc. 80 at 17–18]. Plaintiffs argue that *Ross* is distinguishable because, unlike *Ross*, there is no concern about diluting the original class members' recovery; instead, the proposed settlement in this case contemplates only injunctive relief, which "does not get diluted if the class expands." [Doc. 86 at 11–12].

This Court respectfully disagrees that its only concern with respect to whether relief was negotiated at arm's length should be limited to monetary, rather than injunctive, relief—particularly when, in the context of Lanham Act claims, injunctive relief may be as important as, or more important than, monetary damages.[8] But the Court also notes that speculation arising

---

[8] To that end, plaintiffs in Lanham Act cases face different standards of proof with respect to injunctive relief versus monetary damages. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997) ("[C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof."). "When a plaintiff is seeking injunctive relief, the 'plaintiff does not need to establish actual damages, and is instead held to a lesser standard of proving that it is likely that the defendant's advertising has caused or will cause plaintiff injury.'" *Vitamins Online, Inc. v. HeartWise, Inc*, No. 2:13-cv-00982-DAK, 2020 WL 6581050, at *20 (D. Utah Nov. 10, 2020) (quoting *Berken v. Jude*, No. 12-cv-02555-RPM, 2013

from the mere existence of parallel litigation and purported expansion of the settlement class is insufficient evidence of a reverse auction to deny preliminary approval. "[A]n objector cannot simply say the words 'reverse auction' and expect to invalidate a proposed settlement." *In re Wendy's Co. S'holder Derivative Action*, No. 1:16-cv-1153, 2020 WL 13169460, at *8 (S.D. Ohio Jan. 24, 2020), *aff'd*, 44 F.4th 527 (6th Cir. 2022). "[C]ourts have routinely recognized that the mere allegation of a 'reverse auction' . . . is unavailing absent 'concrete evidence of collusion.'" *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685, at *11 (N.D. Tex. Oct. 14, 2022) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). "If concrete evidence were not required, all settlements of competing cases where there are multiple collective actions would be derailed by accusations of reverse auction." *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-cv-02378-SHM-TMP, 2020 WL 7634780, at *10 (W.D. Tenn. Dec. 22, 2020). At this preliminary stage, the Court is without sufficient information and evidence to infer the existence of a reverse auction. *See Marshal v. Monster Energy Co.*, No. CV-14-06311-MWF-PLA, 2016 WL 11758806, at *15 (C.D. Cal. Feb. 29, 2016) ("The Court cannot conclude from the inconsistencies in the record and the substance of Settlement Agreement that Plaintiffs colluded with Defendant in a 'reverse auction.' The Court may well conclude otherwise, however, after reviewing all available evidence and objections at the final stage of settlement approval.").

 ***Self-Dealing***. Intervenors next contend that there are indicators of self-dealing in the Proposed Settlement Agreement, such as a "'kicker' agreement" and a "'clear sailing' agreement," that warrant heightened scrutiny from the Court. [Doc. 80 at 18]. A kicker provision, whereby

---

WL 6152347, at *2 (D. Colo. Nov. 22, 2013)). "[T]he standard of proof required when a plaintiff is seeking disgorgement is somewhere between the standards for money damages and injunctive relief." *Id.*

any money not awarded in attorney's fees reverts to the defendant (as opposed to the class), and a clear sailing arrangement, wherein the defendant agrees to not object to an award of attorney's fees up to a certain amount, are "indicia of possible implicit collusion." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "[T]hese factors are not dispositive but merely 'warning signs.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1071 (N.D. Cal. 2017); *see also Samsung*, 997 F.3d at 1088 ("To our knowledge, no court has adopted a *per se* rule against inclusion of 'kicker' and 'clear-sailing' agreements in settlements.").

Plaintiffs do not respond to Intervenors' argument, but Grubhub disputes the existence of a clear sailing agreement or a kicker agreement in the Proposed Settlement Agreement. First, it contends that there is no clear sailing arrangement because it "has not agreed to the payment of any attorneys' fees," but has instead "merely agreed not to oppose a request by Plaintiffs' counsel[] for reasonable attorneys' fees, costs, and expenses up to $450,000." [Doc. 87 at 8]. But this arrangement appears to fit squarely within the exact definition of a clear sailing agreement, wherein the defendant agrees not to object to an award of fees up to a certain amount. *See Bluetooth*, 654 F.3d at 947.

In addition, Grubhub contends that there is no kicker agreement because "this is an injunctive relief-only settlement so it is unclear how there even could be an agreement on fees reverting to Grubhub." [Doc. 87 at 8 (quotation and alterations omitted)]. The Court agrees with Defendant. The provision cited by Intervenors states, in full:

> In accord with Rule 23(h) of the Federal Rules of Civil Procedure and relevant case law, Settlement Class Counsel may apply to the Court for an award of its reasonable attorneys' fees to be determined and approved by the Court. Settlement Class Counsel agrees to seek a reasonable attorneys' fee consistent with the factors applicable in the U.S. District Court for the District of Colorado. Grubhub will not oppose such a request of reasonable attorneys' fees, costs, and expenses up to

> $450,000. This Agreement does not preclude Settlement Class Counsel, in its sole discretion, from seeking an award greater than $450,000 should they deem it reasonable based on the complexity of the settlement approval process. Grubhub reserves the right to object to any request for an award of attorneys' fees, costs, and expenses above $450,000, if Grubhub, in its sole discretion, believes such request is unreasonable.

[Doc. 76-1 at ¶ 7.1]. There is no reversionary provision in this paragraph, and it is unclear to the Court how any settlement agreement that provides only injunctive relief would contain a kicker provision. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 9936692, at *5 n.5 (W.D. Okla. June 11, 2020) (explaining that "kicker agreements usually involve money that was initially allocated to the class, which is never claimed and therefore reverts to the defendant"), *aff'd*, 997 F.3d 1077.

In any event, the mere existence of a clear sailing provision does not automatically render preliminary approval inappropriate, *Volkswagen*, 229 F. Supp. 3d at 1071, and the Tenth Circuit has expressly rejected an invitation to "adopt a *per se* rule prohibiting parties from including 'kicker' and 'clear-sailing' agreements in class action settlement agreements." *Samsung*, 997 F.3d at 1089. Indeed, "it has long been recognized that 'kicker' and 'clear-sailing' agreements can play an important role in class action settlement negotiations because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged." *Id.* (quotation omitted). The Tenth Circuit has adopted a "heightened scrutiny approach" to assess the adequacy of a settlement agreement "containing a 'kicker' agreement *and* a 'clear-sailing' agreement,"[9] but there

---

[9] The Tenth Circuit instructed that the district court should consider (1) whether the settlement was negotiated at arm's-length; (2) the fees and costs awarded in comparison to the value of the settlement; (3) "the structure of the negotiation process, including whether the parties negotiated attorneys' fees and costs while negotiating class compensation or whether negotiations on fees and costs were reserved until after the parties reached an agreement on class compensation"; (4) whether the parties relied upon a neutral mediator; and (5) the "litigation and settlement agreement as a whole, searching for other indicia of self-dealing by class counsel through

is no indication that this same heightened scrutiny applies to a proposed settlement agreement with just one of the two provisions. *See id.* at 1091. In any event, at most, Intervenors have demonstrated that this Court should apply a heightened level of scrutiny in assessing the fairness of the settlement at the final approval hearing; they have not demonstrated that this is an appropriate basis to deny preliminary approval.

    ***Other Examples of Collusion***. Finally, Intervenors argue that the Parties' respective attorneys have "cooperated to impair restaurants' interests in the *Lynn Scott* case." [Doc. 80 at 19]. Namely, Intervenors contend that the Parties "worked together to stay [the *Lynn Scott*] case and attempt to settle it on terms highly favorable to Grubhub." [*Id.*]. In support, Intervenors represent that "[o]nly hours before Grubhub moved to stay the *Lynn Scott* case, Freshcraft filed an amended complaint [in this action] that expanded its proposed class definition to cover all the restaurants involved in *Lynn Scott*—and made no other substantive changes," and that "Grubhub's motion [to stay the *Lynn Scott* case] relied heavily on this new class definition, in a manner that would not be possible if the parties were not already cooperating." [*Id.*]. Second, Intervenors assert that the day before Grubhub filed its reply in support of its motion to stay in the *Lynn Scott* case, the Parties "announced they had reached a settlement" in this case, and the settlement was the basis of Grubhub's reply. [*Id.*]. And finally, they contend that "[o]nly hours" before Grubhub filed its response to the motion to lift the stay in the *Lynn Scott* case, Plaintiff filed an amended complaint in this action. [*Id.* at 20]. Intervenors contend that "[t]his type of conduct indicates that rather than working to protect class member[s'] interests, Plaintiffs are colluding with Grubhub to impede those interests." [*Id.*].

---

negotiations with the defendant." *Samsung*, 997 F.3d at 1091. The Tenth Circuit further explained, however, that these considerations are not an exhaustive list. *Id.* at 1091 n.15.

However, Intervenors do not explain why the timing, alone, of the purported parallel conduct in the two related actions demonstrates improper collusive behavior *against the class members' interests* or why the parallel conduct, alone, warrants denial of the Motion for Preliminary Approval. *See generally* [*id.* at 19–20]. To be sure, it *could* be the case that the Parties expanded the proposed settlement class in this case in an attempt to undercut the *Lynn Scott* plaintiffs' case. *See* [Doc. 40-3 at 3 (in Grubhub's reply in support of its motion to stay the *Lynn Scott* case, stating that the proposed settlement class in this case "subsumes the putative class in [the *Lynn Scott*] action")]. But it could also be the case that the amendments were a non-collusive, natural end result of months of negotiations. Insofar as Intervenors believe there is collusion warranting heightened scrutiny, they can raise this argument, with supporting evidence, at a final fairness hearing.[10]

For all of these reasons, the Court is unpersuaded by Intervenors' suggestions, based on the record currently before it, that purported collusion between the Parties warrants denial of the Motion for Preliminary Approval.

---

[10] Intervenors also argue that "Plaintiffs' counsel has a recent history of violating its professional responsibilities" and that "[w]hen added to the self-serving, class-harming decisions Plaintiffs' counsel have made in this litigation, [Intervenors] respectfully submit that the overall record does not support the conclusion that the proposed settlement is the product of skilled, experienced advocacy or good-faith, arm's-length bargaining." [Doc. 80 at 21–22]. Intervenors' arguments are not well taken. In *Britton v. Seneca Meadows, Inc.*, No. 50649, 2020 WL 9422437 (N.Y. Sup. Ct. Dec. 23, 2020), a judge stated that it "appear[ed]" that Plaintiffs' counsel violated the rules of professional conduct for failure to provide disclaimers on marketing materials, *see id.* at *5, which Plaintiffs represent was due to "inadvertent clerical errors that were made six years ago (2016) by an associate who is no longer with" counsel's firm. [Doc. 86 at 12]. And in *Wright v. IFF Chemical Holdings, Inc.*, No. 3:21-cv-12-BJD-MCR, 2021 WL 2934907 (M.D. Fla. July 9, 2021), the court struck an amended complaint filed by Plaintiffs' counsel where the plaintiffs had already used their one amendment as a matter of course under Rule 15. *Id.* at *1. Respectfully, this Court fails to conclude that these prior acts calls into question the quality of counsel's representation in this case.

### 3.      Adequate Relief

Next, the Court must assess the adequacy of the relief provided in the Proposed Settlement Agreement, taking into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  Plaintiffs contend that serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, such that the value of the immediate settlement outweighs the possibility of future relief after protracted, expensive litigation.  [Doc. 76 at 19–22].  They maintain that "[c]omplex class actions on behalf of a nationwide class of businesses are inherently expensive to litigate, and the complexity and potential liability involved lends itself to prolonged litigation and appeals," [*id.* at 21], and that, while Plaintiffs have raised claims for actual damages and disgorgement of profits under the Lanham Act, it would be "difficult, if not impossible" to prove that any restaurant suffered such damages or is entitled to disgorgement of Grubhub's profits.  [*Id.* at 21–22].  They further note that the Proposed Settlement Agreement "secure[s] the exact injunctive relief sought by Plaintiffs . . ., while preserving the ability of Settlement Class Members . . . to pursue claims for monetary relief."  [*Id.* at 20].

Intervenors object on the basis that the Proposed Settlement Agreement does not afford adequate relief to putative class members because the injunctive relief provided is ineffective and is designed to preserve the status quo for Grubhub.  [Doc. 80 at 22].  Specifically, they contend that the Proposed Settlement Agreement requires only that Grubhub create forms for restaurants to request removal from Grubhub's platforms, but does not require Grubhub to stop listing restaurants on its platform without the restaurants' consent.  [*Id.* at 23].  They contend that

restaurants have always had the ability to request removal from the platforms, but that "Grubhub regularly ignores these requests." [*Id.*].   At bottom, Intervenors argue that restaurants in the putative class will not benefit from the proposed settlement. [*Id.* at 26–28].[11]

The Court concludes that, at this preliminary stage, the proposed settlement "is within the range of possible approval." *Nieberding*, 2015 WL 1645798, at *4.   The Court acknowledges Intervenors' concerns that the injunctive relief provided in the Proposed Settlement Agreement would be nothing more than illusory. *See* [Doc. 80 at 23].   However, the Court is not convinced that Grubhub's alleged past conduct and Intervenors' speculation as to Grubhub's future conduct is appropriately considered at the preliminary approval stage; Intervenors may raise their concerns, with supporting evidence, in the context of a final hearing.   Furthermore, the Proposed Settlement Agreement does more than just require Grubhub to create forms for restaurants to request removal, as Intervenors suggest.   In the Proposed Settlement Agreement, Grubhub has also agreed to no longer display that restaurants are "not accepting online orders" unless otherwise permitted by

---

[11] Intervenors also challenge the efficacy of the disclaimer contemplated in the Proposed Settlement Agreement, asserting that "the parties have not even disclosed what Grubhub's proposed disclaimer would say, much less demonstrated that it is likely to reduce customer confusion." [Doc. 80 at 25].   In the Stipulation, the Parties state that the disclaimer:

> will be located on each Covered Restaurant's Information page and state the following or substantially similar language: "Grubhub is not affiliated with and does not have an agreement to deliver for this restaurant.   In-store hours and available menu items may differ.   Please contact the restaurant directly to obtain up to date information on menu items.   If you own this restaurant, please claim your business to update menus, change hours, and more."

[Doc. 85 at 1–2].   In their Surreply, Intervenors characterize this additional information as "a welcome improvement" and a "step in the right direction," [Doc. 89 at 1, 2], but nevertheless argue that preliminary approval should be denied because there is no evidence presented as to how the disclaimer would appear on Grubhub's platforms and "if Grubhub is permitted to print this disclaimer in fine print at the bottom of landing pages—instead of in bold print directly next to any unauthorized use of the restaurant's trademark—it is not likely to be noticed or read by hungry customers." [*Id.* at 2].   Without evidence, this Court is not persuaded that this speculation about consumer conduct is a sufficient basis to deny preliminary approval.

restaurants, permit restaurants to "claim ownership" of their business, add a disclaimer that restaurants are not affiliated with Grubhub, and update its FAQ page to explain how to request removal from Grubhub's platforms.  [Doc. 76-1 at ¶ 3.1.1; Doc. 85 at 1–2].

This conclusion, however, is not reached lightly, and the Court emphasizes its *preliminary* nature.  While Plaintiffs argue that the benefits of settlement outweigh the risks inherent in litigation, their argument is fairly boilerplate and unspecific to this case and the claim and allegations herein.  *See, e.g.*, [Doc. 76 at 20 ("The difficulties of [prosecuting] a case of this nature are hard to overstate.")]; *see also Lusk v. Five Guys Enterprises LLC*, No. 1:17-cv-00762-AWI-EPG, 2019 WL 7048791, at *5 (E.D. Cal. Dec. 23, 2019) (denying preliminary approval where the plaintiff "merely assert[ed] without any meaningful discussion or detail that the claims against the Defendants, if they were to proceed to trial and not settle, would risk the difficulty and uncertainty of being certified under Rule 23(a)–(b) and being proven on the merits.").  In addition, both Plaintiffs and Defendant insist that many restaurants who have not partnered with Grubhub do not want to be removed from Grubhub platforms, with no evidence in support.  *See* [Doc. 86 at 7; Doc. 87 at 10].  However, the Court also notes that Plaintiffs represent that the entirety of the injunctive relief sought on behalf of the putative class has been secured in the Proposed Settlement Agreement.  [Doc. 76 at 20]; *see also In re Lifelock, Inc. Mktg. & Sales Pracs. Litig.*, No. MDL 08-1977-MHM, 2010 WL 3715138, at *5 (D. Ariz. Aug. 31, 2010) (preliminarily approving settlement for injunctive relief that "was explicitly sought in the [l]itigation"); *Nat'l Fed'n of Blind of Cal. v. Uber Techs., Inc.*, No. 14-cv-04086 NC, 2016 WL 9000699, at *8 (N.D. Cal. July 13, 2016) ("Here, the Court finds that the agreement is fundamentally fair, adequate, and reasonable because plaintiffs received nearly all the injunctive relief they sought.").  Furthermore, in taking into consideration the Parties' Stipulation and the anticipated amendment of the Proposed

Settlement Agreement, the proposed settlement does not extinguish class members' ability to bring any claims for monetary relief in *any* form.  [Doc. 85 at 1].

The Court emphasizes the lenient burden at the preliminary stage and emphasizes that the relief appears to be *within the range* of possible approval.  *Nieberding*, 2015 WL 1645798, at *4. However, the Parties are on notice that the Court will expect a more detailed and specific analysis with respect to the adequacy of the relief in any motion for final approval and related hearing.

### 4.     Equitable Treatment of Class Members

Next, the Court considers whether the proposed settlement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(d).  Assessing this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

The Intervenors contend that the class members are not treated the same as the class representatives because "all but two restaurants would receive nothing under the settlement: no money, no notice, and no right to ever sue to stop Grubhub's ongoing use of their trademarks," but that Freshcraft and Piper Inn would each receive $5,000 each in service awards.  [Doc. 80 at 28]. They argue that there is no evidence that Freshcraft or Piper Inn spent significant time or effort on this case, and for this reason, the Court should be "suspicious" that the payment may be "an incentive for [the class representatives] to support a weak settlement."  [*Id.* at 28–29 (quoting 4 *Newberg*, § 13:56)].  Plaintiffs do not respond to this argument, *see generally* [Doc. 86], but Defendant contends that the Proposed Settlement Agreement treats all class members equitably because the service fee compensates Freshcraft "for its involvement in extensive settlement

negotiations" and compensates Piper Inn "for the considerable efforts it would then have expended in defending the Amended Settlement through the final fairness hearing."  [Doc. 87 at 13]. Defendant also notes that "both Plaintiffs—unlike other class members—have agreed to release all of their claims against Grubhub."  [*Id.* at 14]; *see also* [Doc. 76-1 at ¶ 3.2.1].

Generally speaking, where named plaintiffs perform extra work, they are entitled to a reasonable service award because they are not similarly situated to other class members.  *See McKnight v. Erico Int'l Corp.*, No. 1:21-cv-01826, --- F. Supp. 3d ----, 2023 WL 2003276, at *11 (N.D. Ohio Feb. 8, 2023).  But no Party has cited any legal authority discussing the propriety of a service fee award where the remaining class members received only injunctive relief or the appropriate guideposts in assessing equitable treatment in this circumstance.  Through its limited independent research, the Court found a small number of cases in which courts have permitted named plaintiffs to receive a small incentive award even where the rest of the class receives only injunctive relief.  *See, e.g.*, *Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) (granting final approval and concluding that class members were treated equitably relative to each other where the class members would "receive exactly the same injunctive relief" and "[t]he one difference between Plaintiffs and the Settlement Class is that Plaintiffs seek a $2,000 incentive award"); *Chan v. Sutter Health Sacramento Sierra Region*, No. LACV15-02004JAK (AGRx), 2017 WL 819903, at *3 (C.D. Cal. Feb. 14, 2017) (noting that concerns of inequitable recovery were "relevant" where the parties sought a $3,000 service award for the plaintiff in an injunctive-relief settlement and reducing the plaintiff's award to $1,000). Furthermore, while Intervenors insist that "[t]here is no evidence that either Freshcraft or Piper Inn have invested significant time or effort in the case on behalf of other class members," [Doc. 80 at 29], this case is still at the preliminary approval stage, and "any award of service fees to

named Plaintiffs will be subject to further review and approval of this Court." *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 7160380, at *2 (W.D. Mo. Nov. 18, 2019); *see also Walker v. Life Ins. Co. of the Sw.*, No. CV-10-9198-JVS (JDEx), 2021 WL 1220692, at *10 (C.D. Cal. Feb. 22, 2021) (granting preliminary approval even where the court "[could not] conclude without more detailed evidence of Named Plaintiffs' participation whether the service awards would amount to equitable treatment of the Class Members").

Because Plaintiffs do not presently request Court approval of the $5,000 incentive awards, the Court concludes that the Parties' arguments are more appropriately considered at the final approval stage, at which time the Parties and Intervenors can submit admissible evidence in support of or in opposition to the contemplated incentive awards.  Accordingly, the Court does not identify any obvious deficiencies in the equitable treatment of the class members relative to each other, which weighs in favor of preliminary approval.

### 5.      Counsel's Opinion of the Fairness of the Proposed Settlement

Finally, the Tenth Circuit directs the Court to consider the Parties' own assessment of the reasonableness, fairness, and adequacy of the proposed settlement.  *Tenille*, 785 F.3d at 434. Plaintiffs represent that their counsel "strongly believe[] the Amended Settlement to be fair and reasonable."  [Doc. 76 at 23].  "The Court will have more information on this issue after settlement class members receive notice and an opportunity to object.  At this time, however, [this] factor weighs in favor of preliminary approval."  *Motor Fuel I*, 258 F.R.D. at 681.

In sum, the Court finds no obvious deficiencies in the substance of the Proposed Settlement Agreement that gives a reason to not provide notice to the class members.  However, for the reasons set forth below in Section IV.D, the Court cannot grant Plaintiffs' request for preliminary approval of the Proposed Settlement Agreement at this juncture.

### D.        Notice of the Proposed Settlement

Typically, in preliminarily approving a class action settlement, a court will also approve the parties' submissions for providing notice of the settlement to class members.  Here, however, Plaintiffs state that the Parties "agree that notice and opt-out rights do not apply and are not necessary to comport with due process or the Federal Rules of Civil Procedure."  [Doc. 76 at 13]. They also cursorily state that they "further agree that notice in this case would be cost prohibitive." [*Id.* at 14].  Defendant similarly argues that no notice is required in this case because the proposed settlement provides for only injunctive relief.  [Doc. 87 at 14–15].

There are multiple notice provisions in Rule 23, two of which are relevant here: one provision contained in Rule 23(c), and another contained in Rule 23(e).  Rule 23(c), which is titled "Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses," concerns notice *of a court's certification of a class*, and distinguishes between classes certified under Rule 23(b)(1) and (b)(2), on the one hand, and Rule 23(b)(3), on the other.  *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.") (emphasis added); *see also* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3) . . . the court *must* direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. ") (emphasis added).

Rule 23(e), meanwhile, titled "Settlement, Voluntary Dismissal, or Compromise" and which "appl[ies] to a proposed settlement," requires that a court "*must* direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P.

23(e)(1)(B) (emphasis added).  The purpose of Rule 23(e) is to "discourage the use of the class action device by the individual representative plaintiff to secure an unjust private settlement and to protect the absent class members against the prejudice of discontinuance."  *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 761 (6th Cir. 2005).  Importantly, Rule 23(e)'s notice requirement applies "regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  Manual for Complex Litig. § 21.312; *see also* 2 *Newberg*, § 4:36 ("Rule 23(c) makes notice *of a class certification decision* discretionary, but Rule 23(e) *requires* that (b)(2) class members receive notice of any *proposed settlement*." (emphasis in original)).  Indeed, "even in an injunction-only suit such as this, where plaintiffs are not afforded notice and opportunity to opt out, Rule 23(e) requires that the court give notice to all class members of a proposed settlement or dismissal."  *Haab v. City of Bossier City*, No. 16-cv-1663, 2018 WL 1220570, at *4 (W.D. La. Mar. 8, 2018); *see also Guttmann v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-HSG, 2016 WL 9107426, at *2 (N.D. Cal. Aug. 1, 2016) (assessing the adequacy of notice of settlement provided to class certified under Rule 23(b)(2)).[12]

---

[12] Insofar as Defendant cites cases in support of its argument that notice of the proposed settlement is not required where a class is certified under Rule 23(b)(2), *see* [Doc. 87 at 14–15], the Court respectfully disagrees with these authorities and their apparent interpretation of the Supreme Court's ruling in *Wal-Mart Stores, Inc. v. Dukes*.  In *Dukes*, the Supreme Court held that claims for monetary relief cannot be certified under Rule 23(b)(2) if the monetary relief is not incidental to injunctive or declaratory relief.  *See* 564 U.S. at 360.  In this discussion, the Court discussed the differences between classes *certified* under Rules 23(b)(1) and (b)(2) versus classes *certified* under Rule 23(b)(3), stating: "The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of *the action*."  *Id.* at 362 (emphasis added).  The Supreme Court did not hold that notice of a proposed settlement is not required to members of a class certified under Rule 23(b)(2), and indeed, did not mention Rule 23(e) at all in the opinion.  *See generally id.*  Thus, the Court is unpersuaded that *Dukes*, which does not mention Rule 23(e), promotes an interpretation of Rule 23(e) that is inconsistent with the Rule's plain language.

"[N]otice in this case is not about allowing absent class members to opt out of the injunctive relief, but rather is about giving them the opportunity to understand how their rights will be affected by the proposed settlement; object to the settlement if they believe it is insufficient; and weigh in on the anticipated motions for attorneys' fees and incentive awards for the named Plaintiffs." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-HSG, 2020 WL 2091801, at *3 (N.D. Cal. Mar. 31, 2020). To further the point, the Court notes that the objection procedures proposed by the Parties are extensive and strict. They propose that any class members who wish to comment on or object to the Proposed Settlement Agreement "must do so in writing mailed to the Clerk of Court, Plaintiff[s'] Counsel, and Defense Counsel." [Doc. 76 at 15]. Any lawyer representing an objecting party must "(a) file a notice of appearance with the Court . . .; (b) file a sworn declaration attesting to representation of each proposed Settlement Class Member on whose behalf the lawyer has or will be acting; and (c) comply (and ensure their client's compliance) with each of the objection requirements set forth in the Proposed Order." [*Id.* at 16]. And in the Parties' Proposed Order, they delineate *ten* separate requirements for the contents of any written objection. *See* [Doc. 76-1 at 30–31]. Furthermore, if any objecting party wants to be heard at a final fairness hearing, they must include in their objection a statement of "their intention to appear at the Final Approval Hearing." [Doc. 76 at 16]. If an objector fails to comply with *any* of these numerous requirements, the objector will be "deemed to have waived their objections to the [Proposed Settlement Agreement] and . . . be forever foreclosed and barred from making any objection." [*Id.* at 15]. It is unclear to the Court how any objecting class member could reasonably be expected to comply with all of these requirements without any notice of the Proposed Settlement Agreement and these stringent requirements. Without notice, any opportunity to object is illusory, depriving class members of their right to object under Rule 23(e)(5). "If the class action settlement is

'fundamentally fair, adequate and reasonable,' as required under Rule 23, the parties should have no fear or hesitation about disclosing its terms to absent class members." *Ang*, 2020 WL 2091801, at *3.

Thus, the Court disagrees with the Parties that notice of the proposed settlement is not required in this matter, and the Court "cannot determine the adequacy of any form of notice that has not been specifically submitted for approval." *Adams v. Cradduck*, No. 5:13-cv-05074, 2014 WL 12639862, at *3 (W.D. Ark. Aug. 1, 2014). The Court will thus **DENY** the Motion for Preliminary Approval insofar as it seeks preliminary approval of the Proposed Settlement Agreement, with leave to re-file upon correcting the notice deficiency identified herein. *See Martinez v. Hammer Corp*., No. CV-09-06135 MMM (AGRx), 2010 WL 11520538, at *3 (C.D. Cal. July 30, 2010) (discussing interplay between Rules 23(c)(2)(A) and Rule 23(e) and denying preliminary approval where "approving the settlement as presented by the parties would violate Rule 23(e) and class members' due process rights"); *cf. Altes v. Sambazon*, Inc., No. 8:19-cv-01340-JLS-JDE, 2020 WL 13582813, at *5 (C.D. Cal. May 12, 2020) (denying preliminary approval where "the proposed notice campaign [was] not reasonably calculated to reach a substantial number of Class Members who would be bound by any judgment entered").

## V.      Advisement to the Parties and Intervenors

Due to the length of time that this case has been pending, and the fact that any future motion for preliminary approval will be Plaintiffs' third, the Court offers the Parties and Intervenors the following guidance. First, the Court notes that it has found that, with respect to the bulk of the substance of the Proposed Settlement Agreement, preliminary approval is warranted. In light of the Court's analysis in this Order, and because any objections may be raised at the final approval stage (if this case reaches that point), Intervenors are advised that the Court is not inclined to

entertain further substantive objections to the Parties' anticipated amended motion for preliminary approval and will not re-consider any arguments already made and rejected during the preliminary approval stage.[13]  **Any further objections must raise arguments not previously raised to the Court, must be supported with specific legal authority and/or evidence, and must identify an <u>obvious</u> deficiency in the Proposed Settlement Agreement that takes the proposed settlement out of the range of possible approval.**  Second, the Court advises the Parties that, in light of this Court's conclusions with respect to the representations in the Stipulation, the Court **<u>will not</u>** preliminarily approve any amended proposed settlement agreement that fails to **expressly** incorporate or include the Parties' understanding of the release of claims as set forth in the Stipulation, so as to prevent future disputes over the scope of the release.  Nor will the Court preliminarily approve a proposed settlement that does not contemplate providing notice of the proposed settlement to class members as required by Rule 23(e); thus, any renewed motion for preliminary approval **must** propose an appropriate method for providing notice of any settlement to class members.

Third, the Court notes that while Plaintiffs admit that Freshcraft "ceas[ed] operations on May 29, 2022," [Doc. 74 at ¶ 7], they fail to address this fact in their Motion for Preliminary Approval.  *See generally* [Doc. 76].  They do not seek appointment of Freshcraft as class representative, but have also not dismissed Freshcraft from this lawsuit and continue to seek a $5,000 service fee award for Freshcraft.  *See* [*id.* at 4, 14].  In addition, Intervenors suggest that

---

[13]  As noted by the *Ross* court, this Court may "impose conditions on the representative parties or on intervenors."  *Ross*, 323 F.R.D. at 662.  To the extent that Intervenors seek any discovery, *see* [Doc. 40 at 3], they must file a motion seeking leave to take such discovery; specifically articulate the discovery sought; and state the Parties' respective positions with respect to discovery, including but not limited to whether any information sought will be voluntarily provided to promote efficiency of this action.  Given that Intervenors contemplated discovery no later than March 18, 2021 when they initially filed their Motion to Intervene, any such motion for leave must be filed no later than **<u>June 15, 2023</u>**.

Freshcraft "likely lacks standing to pursue injunctive relief against Grubhub," but fail to substantively argue this point or support it with any legal authority. [Doc. 80 at 12]. Accordingly, the Parties are **ORDERED** to address this issue in any forthcoming renewed motion for preliminary approval, after meaningful conferral with counsel for Intervenors on this issue.

## CONCLUSION

For these reasons, it is **ORDERED** that:

(1)     The Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement [Doc. 76] is **GRANTED** in part and **DENIED in part**;

(2)     The Proposed Class is **PRELIMINARILY CERTIFIED** for purposes of settlement only;

(3)     Plaintiff Piper Inn is **PRELIMINARILY APPOINTED** class representative;

(4)     Laura L. Sheets of Liddle Sheets Coulson P.C. and Ross Ziev of the Law Offices of Ross Ziev, P.C. are **PROVISIONALLY APPOINTED** interim class counsel;

(5)     Preliminary approval of the Proposed Settlement Agreement is **DENIED**; and

(6)     Plaintiffs are **GRANTED LEAVE** to file a renewed motion for preliminary approval that addresses the specific deficiencies identified in this Order.

DATED: June 1, 2023                                       BY THE COURT:

                                                          _____
                                                          Nina Y. Wang
                                                          United States District Judge